VIDA BRISBY ROCHFORD, Petitioner, v. FLOYD F. BAILEY and MARY E. BAILEY, Respondents.—17 S. W. (2d) 941.

Court en Banc, May 29, 1929.

*John S. Cannon* for petitioner.

*W. T. Alford* for respondents.

*Francis C. Downey, Hugh B. Downey, G. C. Downey, J. Francis O'Sullivan* and *Rees Turpin, Amici Curiae.*

RAGLAND, J.—*Habeas corpus.* The petitioner is the mother of Gerald Ashford Rochford, a minor, now about three years of age: she seeks by this proceeding to have restored to her the custody of her said son, the right to which is now claimed and exercised by the respondents under and by virtue of an alleged decree of adoption rendered by the Juvenile Division of the Circuit Court of Jackson County. The material facts are few and simple.

The minor in question was born December 1, 1925, at Excelsior Springs, Missouri: he was born out of wedlock, but his father was present at his birth, and his father and mother were subsequently married. He was given his father's name, Gerald Ashford Rochford, as disclosed by the birth certificate filed by the attending phy-

sician with the State Bureau of Vital Statistics, on December 9, 1925. The birth certificate also disclosed that his mother's name was Vida Brisby; and it gave the addresses of both father and mother: Kansas City, Missouri.

On December 13, 1925, petitioner received a message calling her to Enid, Oklahoma, to care for her mother, who had become seriously ill. Thereupon she and the father sought out a nurse in Kansas City, a Mrs. Parker, and arranged for her to nurse and care for their child. For such care and attention it was agreed that the child's father would pay Mrs. Parker twenty-five dollars a month. Petitioner told Mrs. Parker that her name was Ford, and that the child's name was Gerald Ashford Ford: she did not give Mrs. Parker her address, nor tell her that she was leaving Kansas City. Petitioner remained out of the State, in attendance on her mother and other members of her father's family, until August 1, 1927. During that time she did not write the nurse, but did correspond regularly with the child's father. The latter assured her from time to time that the child was still with Mrs. Parker, that he was being well cared for and that he was thriving and lusty. On her return to Kansas City, however, she found that the child's father had been deceiving her; that Mrs. Parker on account of not having received the stipulated monthly payments had turned the child over to the Evans Home in Kansas City; and that respondents had thereafter secured his possession and custody through an alleged court proceeding for adoption. After futile efforts to get possession of her minor son, petitioner instituted the present proceeding in this court, on the 18th day of October, 1928.

On the 17th day of January, 1927, the following petition was filed in the Juvenile Division of the Circuit Court of Jackson County:

"In re adoption of Gerald A. Ford; Floyd F. Bailey, Mary E. Bailey, Petitioners.

"Now comes Floyd F. Bailey and Mary E. Bailey, his wife, and petition the court for permission to adopt as their child, Gerald A. Ford, male child born on Dec. 1, 1925, and residing in Jackson County, Missouri.

"Petitioners say that they reside together as husband and wife at Independence in the State of Missouri, that they are of good moral character; that they have a comfortable home; that they have a regular source of income and that they are able to properly care for, maintain, and educate said child, and will to the best of their ability care for, maintain and educate said child and give it proper moral and religious training.

"Petitioners say that the name and residence of the parents of said child are unknown to them and that said parents have absconded

and absented themselves from their place of abode in this State so that the ordinary process of service cannot be had upon them, and that they desire to change the name of said child to Floyd Gerald Bailey.

"Wherefore, petitioners pray the court to enter a decree ordering that from the date thereof said child shall, to all legal intents and purposes, be the child of the petitioners, and that the name of said child be changed to Floyd Gerald Bailey."

On the same day, January 17, 1927, there was entered of record in said court the following order of publication:

"Floyd F. Bailey, Mary E. Bailey, Petitioners, v. Gerald A. Ford, a minor, and the unknown father and the unknown mother of Gerald A. Ford, a minor, Defendants. No. A-5044.

"State of Missouri, to the above named defendants:

"You are hereby notified that an action has been commenced against you in the Juvenile Division of the Circuit Court of Jackson County, Missouri, at Kansas City, for the purpose of changing the name of Gerald A. Ford to Floyd Gerald Bailey and for the further purpose of procuring a decree of adoption on behalf of petitioners, under provisions of Article 1, Chapter 11, Revised Statutes of Missouri, 1919, which said action is returnable to the first day of the next term of court, to-wit: on the 14th day of March, 1927, to be held in the Court House in Kansas City, Missouri, when and where you may appear and defend such action, otherwise petitioners' petition will be taken as true and confessed and judgment entered for petitioners.

"It is further ordered that publication hereof be made according to law in the Daily Record, a newspaper published regularly in said county."

On February 19, 1927, proof of publication was filed showing that the foregoing order had been published in the Daily Record once a week for five consecutive weeks, beginning January 22, 1927.

On April 9, 1927, and during the March Term, an answer was filed in the cause by Hal. H. Thruston, which recited among other things that he had theretofore been appointed guardian ad litem. And on the same day, April 9, 1927, a decree was entered as follows:

"In re adoption of Gerald A. Ford, Floyd F. Bailey and Mary E. Bailey, Petitioners. No. A-5044.

"Now, on this 9th day of April, 1927, the court having considered the petition filed in this court by Floyd F. Bailey and Mary E. Bailey as petitioners, for the adoption of Gerald A. Ford, a minor under the age of twelve years, now residing in Jackson County, Missouri, and Hal H. Thruston, heretofore appointed guardian ad litem for said child in these proceedings, having filed a favorable report herein and the evidence adduced, after such hearing and consideration, the

court is satisfied that the persons petitioning to adopt said child are of good character and of sufficient ability to properly care for, maintain and educate such child, and that the welfare of such child will be promoted by sustaining said petition for adoption, and that it is fit and proper that such adoption should be made.

"Wherefore, it is adjudged, ordered and decreed that from the date of this decree said child shall, to all legal intents and purposes, be the child of said petitioners, that the name of said child be changed to Floyd Gerald Bailey, and that the natural parents of said child shall not hereafter have any right or claim for the services, wages, control, custody or company of said child."

It is the contention of the petitioner that the decree of adoption, on grounds presently to be considered, is absolutely void and therefore subject to collateral attack. In this connection it may be well to observe that the petitioner's financial ability to support her child and her moral fitness to be entrusted with its care and custody may not be questioned for any purpose of this proceeding. As its natural and statutory guardian she is entitled to such care and custody, unless the right has been cut off by the decree of adoption. And the validity of the decree in its turn depends upon whether the statute pursuant to which it was rendered was in all essential respects substantially complied with. This because statutes of adoption are in derogation of the common law, and, like all other similar statutes, must be strictly, or at least substantially, complied with.

Of the several grounds urged in support of the contention that the decree of adoption is invalid we think two of sufficient merit to require consideration: First, the child was not served with summons in the cause; and, second, the parents were neither summoned nor notified in conformity with the requirements of the statute.

I. The statute (Secs. 1095-1103, R. S. 1919) comprehends within itself a complete scheme for the adoption of children: it is a code within itself. Provisions of two sections of the general code (Secs. 1196-1203, R. S. 1919) are incorporated therein by specific reference: aside from these the general code is without application. The validity of the proceeding which culminated in the purported decree of adoption involved in this case must therefore be gauged by the adoption statute standing alone.

Two sections of the statute dispose of the questions under consideration: Sections 1096 and 1098. According to Section 1096 the consent of the child to be adopted is required only when such child is of the age of twelve years or over. The child in the instant case

was under twelve years of age: his consent to the proposed adoption was therefore unnecessary. By Section 1098 only persons *whose consent is required* must be served with summons or notified by publication. It follows that service of summons on the child in the adoption proceeding in question would have been an idle ceremony, so far as the statute is concerned.

The failure of the statute to require the summoning of a child under twelve as a party to a proceeding for his adoption in nowise affects its validity.

"So far as the decisions have spoken on this subject, they indicate that a parent has no vested right in his or her child, and that the Legislature may interpose between the parent and child such regulation as it may deem best for the welfare of either, and that because of its duty 'as *parens patriae* to guard the interest of dependents and protect and control them,' it may authorize a decree of adoption to be made without any notice either to the infant or to its parents, guardian or next of kin." [1 R. C. L. p. 594, sec. 3.]

"The statute of Pennsylvania does not require that the child shall be personally present in court, or that it be notified of the proceeding. Notice to it would in nowise add to or detract from the power given or the duty imposed by law upon the court of determining the question of adoption in the interest and for the welfare of the child. It could neither consent nor object to the power exercised by the State, through the instrumentality of the court, over its person. The power and duty of the State to care for the estates and persons of infants, so far as necessary for their protection and education, have been generally recognized. It is, in cases of this sort, of the same character of jurisdiction over them that is exercised by courts of chancery, which is an exercise of the prerogative of the sovereign, springing from its power and duty, as *parens patriae*, to guard the interest of dependents, and protect and control them." [Van Matre v. Sankey, 148 Ill. 536, 557.]

II. Section 1096 provides that the court shall not declare adoption in cases where the child or person to be adopted is under the age of twenty-one years, unless the parents or surviving parent and guard-ian of the child, if any, consent in writing to the adoption. It further provides certain exceptions to this general requirement with which we are not concerned in this case. Section 1098 then provides that, if the written consent required is not filed in court, the persons whose consent is required shall be notified by summons or publication. If after such notice they do not appear, the court may act upon the petition for adoption without their consent. It

is the clear intent of the statute that there shall be no cutting off of "all legal relationship, and all rights and duties between the child and its natural parents" (the consequences of adoption) without the consent of the parents. Their consent is a condition precedent to the rendition of the decree of adoption. If it is not put in writing and filed in court, they must be notified in the manner prescribed: if after such notice they do not appear, their consent will be conclusively presumed. In the adoption proceedings under review the record fails to disclose that the written consent of the child's parents was filed in court, or that they were served with summons. The question to be determined, therefore, is whether they were constructively notified in accordance with the terms of the statute.

Section 1098 provides that, if any party whose consent is required cannot be found within this State, the court shall order notice by publication according to Sections 1196 and 1203, Revised Statutes 1919. The whole of Section 1196 cannot be incorporated into Section 1098 without creating repugnancies: reading into the latter such provisions of the former as will make a harmonious whole, we have:

"If any such party (whose written consent is required and which is not filed in court) can not be found within this State, 'the court shall make an order directed to the non-residents or absentees, notifying them of the commencement of the suit, and stating briefly the object and general nature of the petition . . . and requiring such defendant or defendants to appear on a day named therein and answer the petition, or that the petition will be taken as confessed.'"

(Section 1203 merely designates the newspaper in which such an order must be published and the time and extent of the publication.) It will be noted: first, that the authority to make the order of publication is vested solely in the court; and, second, that the court's authority in that respect is conditioned on the fact that the persons to be notified cannot be found within this State. That fact is therefore jurisdictional: it must be found by the court before it is authorized to make the order.

In the proceeding in question the record nowhere discloses that it was made to appear to the court, or that the court found, that the parents of the child to be adopted, or either of them, could not be found within this State. Upon the filing of the petition, alleging "that the name and residence of the parents of said child are unknown to them (the petitioners) and that said parents have absconded and absented themselves from their place of abode in this State so that the ordinary process of service cannot be had upon them," the order of publication seems to have gone as a matter of

course. It does not appear that any proof was offered in support of these allegations: the petition was not even verified. Besides the allegation, "that said parents have absconded and absented themselves from their place of abode in this State," is not equivalent to an averment that the parents could not be found within this State. The order of publication did not rest upon an authoritative basis and was therefore void.

The order of publication was ineffective as constructive notice for the further reason that it was directed to "the unknown father and the unknown mother of Gerald A. Ford, a minor." If reasonable diligence had been used, it is highly probable that the petitioners in the adoption proceeding could have ascertained the names of the father and mother. An examination by them of the records of the Bureau of Vital Statistics would have disclosed facts which, in addition to those which they already possessed, would almost certainly have led to the discovery of the true names of the child and his parents. But be that as it may, neither the statute on adoption nor the sections of the general code brought into it by reference authorize an order of publication against unknown defendants.

In arriving at the conclusion that the service on the defendants in the adoption proceeding was wholly ineffectual we have but followed the well-established principle that in order for substituted service by publication to confer on the court jurisdiction over the defendant all the statutory requirements must be successively and accurately taken. [Meyers v. McRay, 114 Mo. 377, 21 S. W. 730; Parker v. Burton, 172 Mo. 85, 72 S. W. 663; Hinkle v. Lovelace, 204 Mo. 208, 102 S. W. 1015; 21 R. C. L. sec. 26, p. 1293.] As the mother of the child, the petitioner in this case, had not consented to the proposed adoption, and was not notified of the proceeding had with reference thereto in accordance with the terms of the statute, the court was without jurisdiction and its decree of adoption was void. It follows that the child, Gerald Ashford Rochford, should be released from the custody of the respondents and delivered into that of the petitioner.

It is so ordered. All concur.