IN RE ADOPTION OF JERRY McAVOY, A MINOR, WILLIAM THELEN AND DOLORES THELEN, APPELLANTS, v. ELMER EKBERG AND EVELYN EKBERG, RESPONDENTS.—173 S. W. (2d) 108.

Kansas City Court of Appeals.   June 14, 1943.

1100

*Chas. N. Sadler* for appellants.

*Duvaul P. Strother* for respondents.

SPERRY, C.—This is an appeal from a judgment whereby adoption of Jerry McAvoy, a minor, by Elmer Ekberg and Evelyn Ekberg, husband and wife, was decreed and application for adoption by William Thelen was denied. William Thelen and Dolores Thelen, husband and wife, appeal.

The Ekbergs gave testimony to the following effect, and their evidence was fully corroborated by the testimony of Jane McAvoy-Connelly, the mother of Mrs. Ekberg and Mrs. Thelen, and by Robert and Leo McAvoy, their brothers, to-wit:

That Jerry McAvoy was born July 5, 1932, in Kansas City, Missouri; that his mother, Dolores McAvoy, now Dolores Thelen, was then twenty years of age, and was unmarried; that Evelyn McAvoy, now Evelyn Ekberg, is a sister of Dolores, and was then unmarried but was engaged to Elmer Ekberg; that Elmer Ekberg lived at the home of Jane McAvoy, later Jane Connelly, and that the latter's children, Evelyn, Dolores, Robert, and Leo, also lived there; that Elmer and Evelyn, together with Dolores and her mother, and the other members of the family, discussed the expected birth of Dolores' child and Dolores agreed that she could not care for the child and that she would give said child to Elmer and Evelyn, and that they should receive, adopt, and rear it. as their own; that Elmer Ekberg took Dolores to the hospital, where the child was born; that on July 16, 1932, he brought Dolores and Jerry back to the family home, where Jerry was immediately delivered into the care and keeping of Elmer and Evelyn; and that on that date Elmer prepared, and Dolores signed, a paper writing in words as follows:

.    .    .    .    .    .    .

"July 16, 1932

"This is to certify that I Dolores McAvoy do here by give in adoption my son born July 5th 1932 of which I give up all rights unto Mr. and Mrs. E. E. Ekberg.

"Signed   Dolores McAvoy

"Adopting Parents   Elmer Ekberg

(Mrs.)  Evelyn Ekberg.

"Witnesses C. L. McAvoy

"Jane McAvoy."

There was evidence which tended to prove that Elmer and Evelyn took the child into their exclusive care and keeping from and after July 16, 1932; that they consulted a physician and prepared and administered food according to a prescribed formula; that they clothed him and nursed and attended him exclusively; that they were married about two or three weeks after receiving the child; that on October 10, 1932, they took the above-mentioned paper writing to a notary

1102

public and delivered same to him for the purpose of having it acknowledged, under seal, by Dolores McAvoy; that Dolores, personally, in the presence of the notary, acknowledged her signature and the execution of the instrument; and that the notary attached his seal thereto, together with the following certificate:

"State of Missouri. }
"County of Jackson }

"On this the 10th day of October 1932 personally appeared before me Dolores McAvoy to me known to be the party who executed the foregoing instrument and she further declares that she executed same as her own free act and will.

"In witness where-of I. J. N. Harrell Notary Public of Jackson County Missouri. I have affixed my seal at my office in Kansas City Missouri on this the day 10th of October 1932.

"My Commission expires April 4, 1933.

"James N. Harrell
"Notary Public"

The evidence further established that, when Jerry was about one year of age, the Ekbergs caused him to be baptised and christened, "Jerry Ekerg," in the Catholic Church which the entire family regularly attended; that they have always provided him with suitable necessities at their own exclusive cost, and have reared him as their own child; that they only told him who his natural mother is about a year before this trial; that they have a good income and live in a comfortable rural home which they own; and that Jerry has cows, pigs and other pets of his own. He definitely expressed, in open court, a desire to be adopted by the Ekbergs, for whom he professed more affection than for his mother.

The evidence further tended to prove that Dolores McAvoy and William Thelen were, prior to the birth of the child, keeping company, and that they were married on October 13, 1932; that they have, ever since, lived together as husband and wife and have two children, a boy about one year younger than Jerry, and a girl about five years of age; that Dolores has seen Jerry a number of times, at irregular intervals, during the years, until June 10, 1942; that she did not provide him with any food, clothing, or other necessities but she gave him a few presents on birthdays and holidays; and that she never asked or sought his care or custody prior to June 10, 1942.

William Thelen testified that when they were married he was willing to take the child into their home but that Dolores stated that she did not want to bring him there for fear that it might cause trouble between her and her husband. Dolores testified that she only agreed to give the child to the Ekbergs because she had no home except that of her mother and that her mother told her that she could not support both Dolores and the child; and that she chose to give the child to the Ekbergs rather than give him to an institution. She testified that,

while she wanted the child at all times, the reason she did not move sooner to get him was that she thought she could not legally secure his custody.

Sometime prior to June 10, 1942, the Ekbergs received a letter notifying them, for the first time, that Dolores claimed custody of Jerry. Until that time, they testified, they entertained no doubt but that they had legally adopted Jerry. They immediately consulted an attorney and negotiations were entered into between counsel for the respective parties in an effort to avoid litigation. The Ekbergs testified that they wanted to retain custody but hoped that they could prevent litigation and publicity that would be injurious to Jerry's welfare. While these negotiations were going forward, and on June 10, there was filed in juvenile court an application for adoption by William Thelen, accompanied by a "written consent" signed by Dolores. No notice of the filing of said application was served on the Ekbergs and the court was not informed of any of the foregoing circumstances of Jerry's birth, custody and rearing. On June 11, a judgment was entered whereby adoption was decreed in favor of William H. Thelen, and Jerry's name was decreed to be "Gerald Thelen." Thereafter, demand was made for custody and the Ekbergs refused to surrender the boy. Notice was served on Thelens, through their attorney, that a motion would be filed to set aside the decree. The parties then entered into negotiations looking toward a settlement of the matter. There was evidence offered in this case tending to prove that Dolores stated that she was, at that time, chiefly interested in giving Jerry a name, rather than in securing his custody; that Thelens' attorney requested that no motion to set aside be filed pending the outcome of the negotiations, and that he prepared and submitted to the Ekbergs an unsigned stipulation providing for divided custody, which stipulation Ekberg refused to sign; that Thelens' attorney informed the Ekbergs that Dolores had agreed that exclusive custody should remain in them; that during this time the Ekbergs filed a motion to set aside the decree of adoption; that, thereafter Thelens' attorney withdrew from the case, whereupon the Ekbergs agreed to take no further steps on their motion until new counsel had been obtained by Thelens; and that, at this point, on August 11, 1942, Thelens applied to a member of this court, in vacation, for a writ of *habeas corpus*.

A preliminary writ was issued. The issue made by the return filed by the Ekbergs and by the motion for judgment on the pleadings filed by Dolores was solely whether or not the natural mother should have custody of her child as against Ekbergs, it being admitted that a decree of adoption in favor of William H. Thelen had theretofore been entered in juvenile court. The preliminary writ was made permanent on August 19, 1942. Neither the welfare of the child nor the legality of the adoption decree was considered in that proceeding.

The judgment in the *habeas corpus* proceeding settled no issue except those. made by the pleadings and that judgment is not *res adjudicata* on this appeal where different pleadings, facts and issues are presented and where the merits of the case are presented for the first time. [Garrett v. Greenwell, 92 Mo. 120, 1. c. 123; Baldwin v. Davidson, 139 Mo. 118, 1. c. 126.] Furthermore, when that judgment was rendered, adoption had been decreed in favor of Thelens but that decree has since been set aside and an adoption decree in favor of Ekbergs has been duly entered.

From and after August 19, 1942, following the ruling on the *habeas corpus* proceeding, Jerry resided in the home of Thelens until the adoption decree in the instant case was entered, Septmber 2, 1942, at which time custody was adjudged to be, thenceforward, vested in the Ekbergs and he was thereupon delivered into their custody where custody now remains.

On August 31, 1942, Ekberg filed an amended motion to set aside the decree of adoption theretofore entered, together with a petition to adopt. The juvenile court, on its own motion, set aside the decree of adoption and, after change of venue was granted, this cause was fully heard on both petitions to adopt. The petition of William H. Thelen was denied and that of the Ekbergs was granted, and the name of the child was changed to "Jerry Ekberg." The trial judge set out his findings of fact at length. He recites therein that he had observed Jerry in the court room during the pendency of the trial and had noted a strong affection exhibited by him toward Mr. and Mrs. Ekberg, which affection was warmly returned; that he had noted an absence of strong filial affection on Jerry's part toward his own mother; and that he had noted a lack of spontaneous comradeship between Jerry and his younger half-brother which, to the court, was noticeable in view of their relationship, their age, and their close association in the same home for a period of two weeks or more just prior to the trial.

Considering these observations made and recorded by the trial judge, and the other facts of record, we find that it is probable that Jerry will be happier in the custody of the Ekbergs than he would be if compelled to submit to the custody of his own mother and Mr. Thelen. He expressed himself to that effect in open court and, in view of his complete abandonment, at birth, by his mother, which abandonment continued over such a long period of years, and of the circumstances of his birth and of this litigation, it is conceivable that imposition and maintenance of his mother's custody over him might embitter him toward her and toward constituted government itself. The emotions of a small boy of a high degree of intelligence, such as Jerry is shown to possess, are often delicately balanced and the effect of the judgment of the court in this case might be either to cause him to grow into a useful member of society or to become an enemy of

his fellowmen. The evidence discloses that he is happily situated and perfectly adjusted to his home and foster parents. If he is forcibly and against his wishes torn from the only home he has ever known and forced to live in a home which is strange to him and with other children who have prior claims on the home and on Mr. and Mrs. Thelen the psychological effect would probably be bad and permanent. Our first duty is to Jerry; and we must not experiment with his welfare. From a careful consideration of all of the evidence, and of the trial judge's personal observation, we think the interests of the child, and of society, will be best served by affirming the judgment.

However, appellants urge that the trial court erred in rendering the judgment upon the facts disclosed by the record because the child is under twelve years of age and there was no evidence tending to prove that the natural mother was unfit to rear him, or that she had consented to his adoption by the Ekbergs. It is contended that statutes relating to adoption are in derogation of the common law and must be strictly, or, at least, substantially complied with. They cite Lamb v. Feehan, 276 S. W. 71, l. c. 78, and Fienup v. Stamer, 28 S. W. (2d) 437, l. c. 439, in support of this contention. The cited cases, and many others, declare that to be the general rule.

Section 9609, Revised Statutes Missouri 1939, provides, in part, as follows:

". . . The consent of a parent of the child shall not be required if such person is insane, or is imprisoned under a sentence which will not expire until two years after the date of the filing of the petition; *or if he or she has wilfully abandoned the child or neglected to provide proper care and maintenance for the two years last preceding such date."* (Italics ours.)

Under this provision of the statute adoption may be decreed either when the natural parents consent thereto, or when the child has been abandoned by the natural parents and such abandonment has continued for a period of at least two years immediately preceding the institution of the adoption proceeding. [In re Perkins, 117 S. W. (2d) 686, l. c. 692.] Mrs. Thelen did not consent to adoption by the *Ekbergs* and it is urged that the abandonment had terminated on August 19, 1942, when Mrs. Thelen obtained custody under the writ of *habeas corpus,* whereas the petition for adoption, filed by the Ekbergs, was not filed until August 31, 1942. It is also urged that there is substantial evidence that Mrs. Thelen repented of the abandonment on June 10, when she joined in proceedings aimed, ultimately, at bringing her son into her home.

Conceding, for the purpose of this discussion, that Mrs. Thelen repented of the abandonment in June, yet if Ekbergs had filed application for adoption at that time, we think the court would clearly have had the power, under the statute, to decree adoption on said petition, because there would have been, in such case, a literal compliance

with the terms of the statute and it would have been the duty of the court to have considered whether or not the best interest of the child would be served by permitting the parent to repent and take custody, or whether his best interests would require that the petition for adoption be granted, notwithstanding the parent's opposition. [1 Am. Jur., page 643, par. 42; 2 C. J. S., pages 424, 425.] Furthermore, the juvenile court, in such case, might have found under proper evidence that the parent had not, in fact, repented of the abandonment but that she was actuated by some motive other than that of repentance. The fact of abandonment is one for the court to determine, Orey v. Moller, 121 S. W. 1102; and we think the question of repentance is also one of fact for determination of the court under the evidence.

However, the degree of compliance with the terms of the statute that is required is not "literal" but "substantial." [Rochford v. Bailey (Sup. en banc), 17 S. W. (2d) 941, l. c. 943.] "However, such statute should not be so narrowly construed as to defeat the manifest intent of the law." [Thompson v. Arnold, 208 Mo. App. 102, l. c. 106; 230 S. W. 332, l. c. 324; In re McFarland, 12 S. W. (2d) l. c. 525.]; The adoption statute is a complete code within itself and all sections thereof should be construed together and the manifest intent of the Legislature declared to be the law. [In re McFarland, supra, l. c. 525.] The very foundation upon which rests the jurisdiction of the court in adoption proceedings is the duty of the State, as parens patriae, to protect and control the interests of the child. The welfare of the child is paramount so long as the rights of parents are not unreasonably disregarded. [2 C. J. S., 425.] Therefore, if the statute above quoted has been substantially complied with, and if the rights of Mrs. Thelen have not been reasonably disregarded, the judgment should be affirmed.

The terms of the statute were substantially complied with in this case because all that prevented a literal compliance, (at least the court could have so found under the evidence), was lapse of twelve days between the rendition of the judgment in the habeas corpus action and the filing of a petition for adoption by the Ekbergs. The writ was issued on a state of affairs brought about by a decree of adoption procured by concealment from the juvenile court of the true facts concerning the birth of the child and his abandonment by his mother for a period of ten years. Such a conclusion is justified because when the judge of the juvenile court learned of the deception practiced upon him he set aside the decree of adoption on the court's own motion. After all of the evidence touching upon the whole matter had been submitted a new decree of adoption was entered in favor of the Ekbergs. Remarks of the court, contained in the record, indicate that it was the court's judgment that such a decree would be in the child's best interests and we agree with that view. We

think that, when the peculiar facts obtaining in this case are analyzed, the statute regarding adoption has been substantially complied with.

Nor do we think that the rights of Mrs. Thelen, the mother, have been unreasonably disregarded. She suffered the child to remain in custody of the Ekbergs for more than ten years before she made claim for him. She says that she did not willingly agree to relinquish him at birth, yet the fact remains that she reaffirmed her intention in this regard three months later, only three days before her marriage to Mr. Thelen; and Mr. Thelen testified that he was willing that she should bring the child into their home at the time of and ever since their marriage but that she declined to do so for fear his presence might complicate her relations with her husband. Then, too, after the court had decreed adoption to Mr. Thelen, there was evidence tending to prove that she told her mother and her lawyer that she did not insist on custody but only that Jerry should bear the same name as that borne by her other children. Under the circumstances here shown it is proper that the rights of the natural mother should yield to the best interests of the child.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.