STATE of Missouri at the relation of M. L. H., individually and as Guardian of the Person and Estate of T. L. H., a Minor, Relator,

v.

Honorable Michael J. CARROLL, Respondent.

No. 30515.

St. Louis Court of Appeals.
Missouri.

Feb. 21, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied and Opinion Modified on Court's Own Motion March 24, 1961.

Cook, Murphy, Lance & English, Milford T. English, Harold S. Cook, St. Louis, for relator.

Chaim H. Zimbalist, Clayton, for respondent.

RUDDY, Judge.

This is an original proceeding wherein relator, individually and as guardian of the person of a female child, seeks to prohibit respondent, the Hon. Virgil A. Poelker, Judge of the Juvenile Division of the Circuit Court of St. Louis County, from proceeding to hear and determine a cause now pending in said division of said court. Hon. Virgil A. Poelker was the original respondent in this proceeding and he has been succeeded by the Hon. Michael J. Carroll as Judge of the Juvenile Court of St. Louis County.

The cause referred to had its beginning with the filing of a pleading in said Juvenile Division of the Circuit Court of St. Louis County denominated a "Petition for Transfer of Custody." Said petition is as follows:

"1. Come now your Petitioners, * * *, and state that they are residents of the City of East St. Louis, County of St. Clair, State of Illinois, and that T. L. H. is a minor child and is a resident of the County of St. Louis, Missouri.

"2. Your Petitioners further state that they are husband and wife, and that they are the maternal grandparents of T. L. H.; that the parents of T. L. H. were both killed in an airplane crash on or about the ninth day of September, 1959.

"3. Your Petitioners further state that their daughter, * * * was the natural mother of T. L. H., and that said infant was born on the first day of October, 1958, in lawful wedlock to K. H. and B. H., her husband.

"4. Your Petitioners further state that on the 18th day of September, 1959, * * * the paternal grandmother of T. L. H., was duly appointed Guardian of the Person and the Estate of T. L. H., in the Probate Court of St. Louis County, and that said infant now lives with said Guardian at * * * in the City of Overland, County of St. Louis, State of Missouri.

"5. Your petitioners further state that they are of good character, that they are ready, willing, and able to properly care for, maintain, and educate said child, and that they are desirous of so doing; that they have a comfortable home, located at * * * in East St. Louis, Illinois, that your Petitioner, R. R., is presently employed and is earning a sufficient income to care for and properly maintain and educate said child; that your Petitioners are able and willing and will properly care for, maintain and educate said child, and will also give said child proper moral and religious training, and your Petitioners expressly state to this Honorable Court that the welfare of said child will be best promoted by the granting of the prayer herein contained.

"6. Your Petitioners further state that if this Honorable Court grant the prayer as herein contained, it is their intention that at the expiration of nine months hereafter, they will do all necessary steps to adopt said child.

"7. Your Petitioners further state that since both the natural father and the natural mother of T. L. H. are deceased, that ordinary process of law will be served upon * * *, the paternal grandmother and Guardian of the Person and Estate of T. L. H., now pending in the Probate Court of St. Louis County and upon * * *, Administrator of the Estate of B. H., deceased, now pending in the Probate Court of St. Louis County, Missouri.

"Wherefore, your Petitioners pray that this Honorable Court enter its Decree transferring custody of T. L. H., an infant, from M. L. H., to your Petitioners and granting legal custody of said infant, T. L. H., in R. R. and A. R.; and for such other and additional relief as to the Court shall seem meet and proper and just under the circumstances."

A copy of said petition was served upon relator who thereafter filed a Motion to Dismiss said Petition. The ground alleged in said motion to dismiss was that the petition showed on its face that the Juvenile Court lacked jurisdiction over the subject matter of said petition. Subsequently, said motion to dismiss was heard by respondent and overruled.

In the proceeding before us relator continues to assert that the respondent does not have jurisdiction of the matter contained in the petition filed by R. and A. R., and in support of this assertion advances the contention that although Juvenile Courts have exclusive jurisdiction over adoption proceedings, the petition filed in the Juvenile Court and under review here was not a petition to adopt said minor, but constitutes only a petition for an order of transfer of custody to the petitioners.

Relator admits that it was necessary for petitioners to obtain an order for transfer of lawful custody of said minor to them so that subsequently they could show lawful and actual custody of the minor child for a period of nine months before the court could grant a decree of adoption of said minor to said petitioners. Section 453.080 RSMo 1949, 24 V.A.M.S.

Before determining whether the Petition for Transfer of Custody under scrutiny before us is one permitted under Chapter 453 RSMo 1949, 24 V.A.M.S. (Adoption Code) it will be helpful to examine the objectives of the adoption code and some of the rules governing its construction. The two principal objectives of the adoption code, past and present, have been and still are (1) to enable one person to make another his heir, regardless of blood relationship, and (2) to change the custody of minor children securing to them support, maintenance and humane treatment. State ex rel. Buerk v. Calhoun, 330 Mo. 1172, 52 S.W.2d 742, 83 A.L.R. 1393. The welfare of the child is the chief concern in a proceeding for its adoption. Its welfare is paramount over all other considerations. In re McKinzie's Adoption, Mo.App., 275 S.W.2d 365; In re Wines' Adoption, 241 Mo.App. 628, 239 S.W.2d 101; In re McAvoy's Adoption, 237 Mo.App. 1099, 173 S.W.2d 108.

Adoption can only be had through compliance with the terms of the adoption statute or a decree of equitable adoption. Adoption was unknown to the common law and exists solely as a creature of the statutory law and said law must be strictly construed. In re Mayernik, Mo., 292 S.W.2d 562; Lamb v. Feehan, Mo., 276 S.W. 71; In re Adoption of McKinzie, supra.

However, this does not mean that a literal compliance with the terms of the adoption statute is necessary. It is sufficient if there is a substantial compliance and the statute

should not be so narrowly construed as to defeat the manifest intent of the law. Rochford v. Bailey, 322 Mo. 1155, 17 S.W.2d 941; In re McAvoy's Adoption, supra; Thompson v. Arnold, 208 Mo.App. 102, 230 S.W. 322.

Akin to the aforesaid is a statement contained in 2 C.J.S. Adoption of Children § 37, p. 418, as follows:

"* * * although it has been said that the petition must be accurate in every respect, the technical rules of pleading should not be stringently applied to adoption proceedings, and it is deemed more important that the petition should contain facts relating to the child and its parents, which may give information to those interested, than that it should be formally correct as a pleading. Accordingly, it is generally held that a petition will confer jurisdiction if it substantially complies with the adoption statute, alleging all facts necessary to give the court jurisdiction."

In Shepherd v. Murphy, 332 Mo. 1176, 61 S.W.2d 746, loc. cit. 749, the court said:

"* * * The adoption statute 'is humane and salutary.' It was enacted 'for the purpose of providing homes and proper nurture, education, and training for children who have lost their parents or children whose parents, because of misfortune or improvidence, are unable to properly rear and educate them, and should be so construed, if it can be done without doing violence to the terms of the statute, as to encourage the adoption of such children by persons who can properly rear and educate them.'"

Turning our attention to the adoption statute, § 453.010 RSMo 1949, 24 V.A.M.S., authorizes the filing of a petition to adopt a child and § 453.020, as amended by Laws 1959, states what the petition shall contain. The sections of the adoption statute pertinent and significant to the contention raised

by relator are § 453.070 and § 453.080. Section 453.070 provides, in part, as follows:

"No decree for the adoption of a minor child shall be entered nor shall transfer of custody of such a child to the petitioner or petitioners in such an adoption petition be ordered by the juvenile court having jurisdiction, until a full investigation has been made of the physical and mental conditions and antecedents of such child for the purpose of ascertaining whether the child is suitable for adoption and of the suitability of the petitioner or petitioners as parents for the child. * * *"

Section 453.080 provides as follows:

"If the court, after due hearing, is satisfied that the allegations of the petition are true, that the person sought to be adopted, if a minor, has been in the lawful and actual custody of the petitioner or petitioners for a period of at least nine months prior to the entry of the adoption decree, and that it is fit and proper that such adoption should be made, a decree shall be entered setting forth the facts and ordering that from the date of the decree the person sought to be adopted shall, to all legal intents and purposes, be the child of the petitioner or petitioners, and the court may decree that the name of the person sought to be adopted be changed, according to the prayer of the petition."

■ Under these two sections of the adoption statute it is readily seen that the matter of the lawful and actual custody of a child is an inherent part of any adoption proceeding. In re Mayernik, supra; and In re Davis' Adoption, Mo.App., 285 S.W. 2d 35.

■ Before the Juvenile Court can award a decree of adoption the petitioners must have had lawful and actual custody of the child for a period of at least nine months prior to the entry of the adoption decree. From this requirement of the statute it is obvious that petitioners seeking to adopt a

child, if they have not had the requisite custody for the period required, must take steps to obtain the custody of the child. This is the first step necessary for the procurement of a decree of adoption. In re Adoption of McKinzie, supra.

■ The first duty of the court in any adoption proceeding before a decree may be entered is to be satisfied that the person sought to be adopted has been in the lawful and actual custody of petitioners for a period of at least nine months prior to the entry of the adoption decree. Section 453.-080, supra.

The Legislature having imposed this duty on the court before it could enter a decree of adoption, gave to the Juvenile Court the authority to make an order transferring the custody of a child. Section 453.070, supra. However, before the Juvenile Court can make such order of transfer of custody, the Legislature imposed on the said court the duty of investigating the physical and mental conditions and the antecedents of the child sought to be adopted and an investigation of the suitability of the petitioners as parents for said child. § 453.070, supra; In re Adoption of Sypolt, Mo., 237 S.W.2d 193, loc. cit. 195.

The provisions of § 453.070 of the adoption statute would be meaningless, unless the Legislature contemplated the right of the court to make orders transferring the custody of children after the requisite investigation, if the court was satisfied that petitioners and child were suited for each other. The adoption statute provides for a trial period of at least nine months for the child in the home of the petitioners prior to the adoption before the court may enter a final decree. This section of the adoption statute prescribing a full investigation of the child and of the adopting parents was included in the adoption statute for the first time in 1947. It constituted a major change in the adoption law and prescribed a full social investigation on which the ultimate decree of adoption must be based. To our minds, it is a most important step in the

adoption proceeding. However, it would have no function to perform if the power to transfer custody of the child sought to be adopted did not exist.

■ Relator contends that the Juvenile Court has jurisdiction to pass upon surrenders of transfers of custody of a minor only under the provisions of § 453.110 of the adoption statute. She asserts that this is the only statute which gives the Juvenile Court any jurisdiction to approve or disapprove the transfer of custody of a child other than the Juvenile Court Act, Chapter 211, RSMo 1949, 12 V.A.M.S., which is not urged by respondent as authority for petitioners' right to file the Petition for Transfer of Custody. Relator contends that § 453.110 was designed solely to prevent *voluntary* transfers of children without court order. With this contention we agree. However, we do not believe that § 453.-110 provides the only circumstances under which a transfer of custody may be made. This section of the adoption statute was designed to prevent the indiscriminate surrender and possession of minor children without court approval. In re Davis' Adoption, supra. This section in no way limits the jurisdiction of the Juvenile Court in connection with the transfers of custody, but merely prohibits persons, agencies, organizations and institutions from surrendering custody or transferring custody of a minor child to others and prohibits such others from taking possession or charge of a minor so surrendered or transferred without first obtaining court approval in the manner prescribed.

That § 453.110 does not provide the only circumstances under which the Juvenile Court may make transfers of custody and that § 453.070 and § 453.080 contemplate the right to make orders of transfers of custody in adoption proceedings where other circumstances prevail, was recognized in the case of State ex rel. Dorsey v. Kelly, Mo., 327 S.W.2d 160, loc. cit. 164, where the court in a discussion of these sections of the adoption statute, said:

"We are of the opinion, however, that when section 453.070 is read in pari materia with section 453.080 (requiring lawful and actual custody of the child as a prerequisite to entry of a decree of adoption) and Par. 2 of section 453.110 (making lawful a conditional transfer of custody to the extent shown in the instant case) it is clear that its provisions are directed solely against any decree of adoption or any transfer of legal custody such as would bring about any permanent change in the legal status or rights of the child or would vest any person with any legal right of its custody *beyond that expressly authorized under Par. 1 of section 453.110* or would divest the parent or other legal custodian of any duty imposed by law to support or care for the child, until the investigation thereon required has been made, reported to and approved by the court." (Italics ours.)

The aforesaid language clearly holds that the Supreme Court recognizes transfers under the named sections of the adoption statute beyond those expressly authorized under § 453.110.

Relator states that she can find no case in this state in which the adoption statute has been used to transfer legal custody of a child from a person who was unwilling to part voluntarily with the custody of the child. It should be pointed out here that we have no question of parental rights involved in this proceeding. In the case of In re Greenwood, Mo.App., 288 S.W.2d 413, decided by this court, the trial court had before it a petition by the maternal grandparents in which "they sought to adopt their granddaughter" Sandra Greenwood. The mother of Sandra was divorced from Sandra's father, Guy Greenwood, and she and Sandra had been living with her parents up to the time of her death. After her death, Sandra continued in the custody of the maternal grandparents and was cared for by them. After the maternal grandparents filed their petition to adopt Sandra, a paternal uncle of Sandra and his wife filed a petition in which they sought to have custody of Sandra transferred to them so that they might seek her adoption at the expiration of the required period of legal custody. The trial court awarded the custody to the uncle of Sandra and his wife who had merely filed a Petition for Custody in which they avowed that they would seek adoption at the expiration of the nine months period. We affirmed the trial court's ruling.

In the instant case, as well as in the Greenwood case, the petitioners were non-residents of the State of Missouri. Obviously, in the Greenwood case the maternal grandparents were unwilling to part voluntarily with the custody of Sandra.

We think that the Juvenile Court in the instant case did have jurisdiction of the Petition to Transfer Custody of the child. It is true the petition in question is not denominated a petition for adoption, nor is there a prayer for a decree of adoption, but the petition unmistakably contemplated adoption because it clearly alleges that petitioners intend to adopt said minor child at the expiration of the required nine months. Frankly, the only order the Juvenile Court can make at this time is one transferring custody of the child. As we have pointed out, petitioners, not having custody of the child, must first take the preliminary step to obtain custody before the court has jurisdiction to grant a decree of adoption. It would have been better procedure for petitioners to join their prayer for custody with recitals and a prayer for adoption. Nevertheless, despite petitioners' failure to do so, we think the petition in question is a substantial compliance with the adoption statute and represents the preliminary and necessary step under the circumstances facing petitioners toward the procurement of an adoption decree. As we have pointed out in the statement from 2 C.J.S. Adoption of Children supra, the technical rules of pleading should not be stringently applied to adoption proceedings and

if the petition substantially complies with the adoption statute, the petition should be found to confer jurisdiction on the Juvenile Court.

▮ Relator also urges lack of jurisdiction in the Juvenile Court because the petition fails to contain a prayer for a decree of adoption. The prayer of the petition may be disregarded and petitioners will be given such relief, orders and decrees they would be entitled to on the facts recited in the body of the petition. Caldwell v. Eubanks, 326 Mo. 185, 30 S.W.2d 976, 72 A.L.R. 621.

We are required to uphold the jurisdiction of the Juvenile Court for a more compelling reason than that stated by us. We think the Supreme Court of this state has ruled on the issue involved in the instant proceeding.

The case of In re Mayernik, supra, was an appeal from a decree of adoption and from an order denying an application for the revocation of a natural mother's consent to an adoption and for the restoration of the custody of her child to her. The Supreme Court in its opinion pointed out that some time prior to the filing of the petition for adoption the petitioners had filed their petition for transfer of the custody of the child to them. The court further pointed out that the petition alleged that petitioners "are desirous of obtaining the lawful and actual custody and control of said child for a period of at least nine months as it is their intention after said time to petition for the adoption of said child." 292 S.W.2d loc. cit. 564. Thereafter, the trial court entered an order sustaining the petition for transfer of custody of said minor child as prayed. The Supreme Court in commenting on this phase of the adoption proceeding said:

"Of course, the adoption in our case awaited the decree of adoption upon the final approval thereof, which approval could be given (or refused) upon application or petition and hearing, and a decree rendered *only after* the prospective adoptive parents, petitioners, had had the lawful and actual custody of the child for a period of at least nine months prior to the entry of the decree of adoption, § 453.080, RS Mo. 1949, V.A.M.S. In the application for the transfer of custody, the petitioners, the Hagemanns, recognized this required nine-months provisional period, and stated their intention 'after said time to petition for the adoption of said child.'

\* \* \* \* \* \*
" \* \* \* The Code treats with adoption *including legal custody of the child subject to adoption.* \* \* \* All of the sections comprising the Code are to be construed together in accordance with the manifest intention of the Legislature. In re Sypolt's Adoption, 361 Mo. 958, 237 S.W.2d 193; In re Davis' Adoption, supra." (Italics ours.) (292 S.W.2d loc. cit. 568, 569.)

The statement that approves the procedure followed by petitioners in the case before us and gives the Juvenile Court jurisdiction of their Petition for Transfer of Custody is contained in the following language of the Supreme Court in the Mayernik case:

"At this point we say the original custody proceeding designed to determine the propriety of the award of legal custody of the child to respondents who proposed to adopt her, *may be considered a proper preliminary procedural step in adoption proceedings.*" (Italics ours.) 292 S.W.2d loc. cit. 569.

The Mayernik case clearly authorizes the filing of a petition for transfer of custody of the child in advance of a petition for adoption. The fact that petitioners for adoption in the Mayernik case had the consent of the mother of the child would in no way affect the jurisdiction of the court. The trial court either had jurisdiction to

transfer the custody of the child in advance of the filing of a petition to adopt or it had no such jurisdiction. The Supreme Court in the Mayernik case in effect said the court had jurisdiction when it held that the filing of the petition for the transfer of custody "may be considered a proper procedural step in adoption proceedings." It must be remembered that the Supreme Court would not and could not have affirmed the decree of adoption until it was determined that petitioners for the adoption had obtained lawful and actual custody for a period of nine months preceding the granting of the adoption. Petitioners' lawful and actual custody was based on the order they received pursuant to their petition for transfer of custody of the child they declared it was their intention to adopt.

We surmise that the attorney for petitioners in drafting the "Petition for Transfer of Custody" under review before us was prompted to do so in the manner followed by the circumstances and holding of the Mayernik case. The language in the petition before us, in connection with the allegation wherein the petitioners alleged it was their intention to adopt said child, is strikingly similar to that used in the petition for transfer of custody under review in the Mayernik case.

In the case of In re Adoption of Sypolt, supra, cited in the Mayernik case by the Supreme Court, the minor child involved had been a ward of the Magistrate Court of Franklin County. The child was placed by said court in the custody of John Brooks and Ida Brooks, his wife, under the supervision of the Franklin County Welfare Office. Two petitions were filed by John J. Drucker and his wife, one being a petition to transfer the custody of said minor child to petitioners and the other being a petition to adopt said minor child. These petitions were filed in the Juvenile Court of Greene County. Petitioners never did have the legal and actual custody of said minor child and sought the custody under their petition for transfer of custody. The Supreme Court held that the Juvenile Court of Greene County was correct in holding that it had no power to entertain the petition for transfer of custody so long as the child resided in Franklin County. While the following statement of the Supreme Court may not have been necessary to a disposition of the issues before it, as suggested by relator, the Court did say:

"The appellants are not without remedy. They may file their petition for adoption in the Juvenile Court of Franklin County, where the child now is, and that court, in the exercise of its discretion, may properly enter an order transferring custody of the child to them. If they prefer to have the decree of adoption entered by the Juvenile Court of Greene County, where appellants reside, *they may first petition the Juvenile Court of Franklin County for an order transferring custody of the child to them,* and having thus obtained custody of the child, file their petition for adoption in the Juvenile Court of Greene County. Compare: State ex rel. Grimstead v. Mueller, Mo. Sup., 233 S.W.2d 700." 237 S.W.2d loc. cit. 196.

When the Sypolt case, decided by the Supreme Court, is considered in conjunction with what the court said in the Mayernik case, no doubt can exist about the jurisdiction of the Juvenile Court to entertain a petition for transfer of custody when it is indicated in said petition that the transfer prayed for is for the purpose of a subsequent adoption. In the petition before us petitioners state that the transfer of custody is sought with the intention of taking all necessary steps to adopt said child at the expiration of nine months of custody of said child.

Finally, relator contends that the Juvenile Court lacks jurisdiction of the Petition to Transfer Custody because said petition is a collateral attack on the judgment of the Probate Court which established relator's status as guardian of the

person of said minor child. This contention is answered by the Supreme Court in the case of In re Duren, 355 Mo. 1222, 200 S.W.2d 343, 170 A.L.R. 391, wherein the court affirmed a decree of adoption. In that case a guardian had been appointed for the child involved some time prior to the filing of the adoption petition. The guardian charged that the adoption decree constituted a collateral attack on the previous judgment of the Probate Court appointing him as guardian. The Supreme Court, in holding that it did not constitute such an attack, said:

> "Furthermore, the adoption proceeding was not an attack upon the intervenor's status as guardian. Secs. 9609, 9610 and 9611 specifically permit a guardian to participate in such proceedings, and provide for notice to him, thereby recognizing his status as guardian. The effect of the proceeding on the guardian is only incidental and consequential. For the adoptee, whose interests are controlling, it involves broader humanities, a close relationship with the adoptive parents, a new home and rights of heirship under Sec. 9614. And while, because of these changed conditions, the proceeding might call for a termination of the guardianship and a final settlement of the estate, yet it would not make the guardian's appointment void ab initio, nor would it assail the judgment appointing him." 200 S.W.2d loc. cit. 348.

In the aforesaid case the court further held that the guardian by mere dissent cannot nullify adoption proceedings in the Juvenile Division of the Circuit Court, which latter is specifically vested with exclusive jurisdiction over adoption proceedings.

We rule that the "Petition for Transfer of Custody" under review in this proceeding was a proper preliminary procedural step in an adoption proceeding and that the Juvenile Division of the Circuit Court of St. Louis County has jurisdiction to act on said petition.

In accordance with the views herein expressed, our preliminary rule of prohibition heretofore issued should be quashed and prohibition denied. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.