In re Petition of Arthur Dickholtz and
Arlyle Dickholtz.
Arthur Dickholtz and Arlyle Dickholtz, Appellants, v.
Miriam Littfin and Winfield Littfin, Appellees.

Gen. No. 45,097.

Heard in the first division of this court for the first district at the February term, 1950. Opinion filed June 19, 1950. Released for publication Setpember 7, 1950.

MARVIN J. BAS, of Chicago, for appellants.

BARRY & CROWLEY, of Chicago, for appellees; PATRICK F. CROWLEY and WILLIAM G. WEBBER, both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

This is an appeal from an order of the county court dismissing the petition for adoption and ordering the petitioners to immediately surrender custody of the child to the respondents, the natural parents. The petition was filed September 7, 1949. The baby was

born out of wedlock on August 17, 1949. The natural mother and putative father were married October 8, 1949. Simultaneously with the filing of the petition the mother signed a prepared form of appearance and consent to adoption in the office of the clerk of the county court. A guardian *ad litem* was appointed by the court to represent the interests of the minor. The order appointing the guardian directed that the statutory requirement for residence of the child with the petitioner for six months prior to the filing of the petition be waived, but "that the entry of the decree in this cause be deferred until the child has resided with the petitioners for six months." On September 15, 1949, the mother filed an answer to the petition, denying that she abandoned the child, alleging a desire to have her child returned to her, and praying that the written consent to adoption be revoked.

On September 29, 1949, the mother filed a petition, alleging in detail the circumstances of the birth of the child out of wedlock; that she was without the benefit of advice from family or friends when, at the request of the nurse on the day she left the hospital, she turned the baby over to a woman, selected by the adopting petitioners, who was to care for the child until the adopting parents were given the custody by order of court; that this arrangement was dictated by the physician who delivered the child; that he was the same physician who suggested to her to consent to having the baby adopted by the petitioners, known to said doctor; that the doctor was dictatorial and domineering in his manner and attitude, and that she feared him; that at the time the nurse took the baby from the mother as she was leaving the hospital, the mother cried and declared she was not going to give her baby to anyone; that she had only been in the hospital five days after the birth of the baby and had been

confined to her bed the entire time and could not walk; that she was taken out of the hospital in a wheel chair; that she was taken directly from the hospital to the County Building in Chicago, and at the request of some lawyer, signed a paper purporting to be her appearance and answer, and consent to the adoption; that she was then under the impression she had six months in which to change her mind; that she had inquired of the lawyer if she had that much time in which to change her mind, and he answered she had; that she immediately notified her family in Georgia of the birth of the child; that her brother came from Georgia to consult with her and help her; that she and her brother then visited the doctor to find out where the . baby was; that he refused to tell her and advised her that if she was looking for trouble, she would get plenty of it; that thereafter she retained her attorneys to represent her. She prayed for leave to withdraw her consent to adoption, that it be declared a nullity, and that the petition for adoption be dismissed and the baby returned to her.

An answer was filed to this petition, denying in substance the facts set up in the petition of the mother. Thereafter, a hearing was had, evidence heard upon the petition and answer, and the order appealed from was entered.

The question presented upon this appeal is whether the natural mother had the right to withdraw her written consent to adoption before the petition for adoption was acted upon, and whether the court abused its discretion in allowing its withdrawal and dismissing the petition for adoption.

██ ██ The legislature in 1945, ch. 4, Ill. Rev. Stat. 1949, par. 1–1 *et seq.* [Jones Ill. Stats. Ann. 19.012 (2) *et seq.*] enacted a completely revised adoption act and passed some amendments thereto in 1949. The clear intention, with new provisions in the revision, was to

403

enlarge the scope of discretion, supervision and control of the trial court in adoption proceedings. In the revised act there are provisions for required probationary periods before the filing of the petition and before the entry of any decree, with the object in mind to test through such periods the welfare of the child, that being always the paramount interest the court must have in the child, which becomes a ward of the court in such proceedings. *People ex rel. Calnan v. Weightman,* 246 Ill. App. 394, 402.

 Adopting petitioners severely attack the character of the mother and point to some evidence in the record which they claim justifies the attack and establishes the unfitness of the mother to have the custody of the child. The meretricious relations between the mother and the putative father are the basis for the attack. We shall not narrate the evidence relied upon by petitioners to justify their attack, and thereby place upon the record of this court a recital that could serve no benefit for the future of the child. *Cowls v. Cowls,* 3 Gilman 435, and *Miner v. Miner,* 11 Ill. 43, clearly hold that the fact a child is born out of wedlock does not alone prove the unfitness of the mother to have the custody of the child. Unless the proof is clear that the natural parents are unfit to have the care, custody and control of the child, the contest for control of the child's future between persons having no vested interest in the child, having had little or no opportunity of developing love, affection and attachment for the child, as in the instant case, as against the natural law which binds a mother to her child, should be resolved in favor of the mother. *People ex rel. Calnan v. Weightman, supra.* The subsequent marriage of the natural mother and putative father results in a status of legitimacy for the child as against a status of illegitimacy, when such a child born out of wedlock is the subject of the adoption proceedings.

The law has always demanded, wherever possible and whenever the circumstances justify, that legitimacy of a child be preserved rather than place the stigma of illegitimacy upon it. *Orthwein v. Thomas,* 127 Ill. 554.

 There is nothing in the adoption act which precludes the trial court from exercising its sound discretion in allowing the withdrawal of the formal consent filed by the mother, and upon the evidence in this record, we are compelled to hold that the court did not abuse its discretion, and that the order dismissing the petition is not against the manifest weight of the evidence. In *In re Thompson v. Burns,* 337 Ill. App. 354, which was an adoption proceeding, the court held (p. 362):

"It is argued by the attorney for the appellants that she had a right to withdraw her consent for the adoption of her minor child before the court had acted upon the petition. This is denied by the appellees. There is no case bearing directly on this matter, which has been called to our attention, in either the Supreme or Appellate Courts of the State of Illinois. Courts from other States are in conflict in regard to it. It seems to us that the better rule of law supports the contention of the appellants that Sarah Burns had the right to withdraw her consent for the adoption of her minor child any time before the court had actually acted upon the petition."

 The court there apparently declares the right of the mother to withdraw the consent as an absolute right. We do not think that the right to withdraw should be declared absolute, but rather that it must be left to the sound discretion of the trial court, depending upon the particular circumstances in each case.

The judgment of the county court is affirmed.

*Affirmed.*

Tuohy, P. J., and Niemeyer, J., concur.