IN RE ADOPTION OF KANE: KANE, JR., ET AL., APPELLANTS, *v.* THORPE ET AL., APPELLEES.

328

(No. 2485—Decided February 19, 1952.)

*Mr. Robert Reed* and *Messrs. Amerman, McHenry, Jones & Morgan,* for appellant petitioners.
*Messrs. Black, McCuskey, Souers & Arbaugh,* for appellant next friend.
*Mr. J. B. Blumensteil* and *Mr. William J. Allen,* for appellees.

MONTGOMERY, J. This appeal to this court is from a denial by the Probate Court of Stark County of a petition by the individual appellants for the adoption of a minor child.

There is presented to us first a motion by the appellants to require the Probate Court to file as a part of the transcript, the next friend's report of investigation provided for by Section 8004-5, General Code.

This next friend, appellant, was appointed by the Probate Court, under the provisions of Section 8004-4, General Code, and according to the representation made to us, filed the report of its investigation, as directed by Section 8004-5, General Code. A portion of this section provides:

"The reports of the investigation required by divisions (B), (C), and (D), shall not be filed with the other papers in the adoption proceedings, but shall be filed separately and shall be available for inspection only upon the personal direction of the probate judge."

The writer of this opinion has just finished reading the recent volume by Roscoe Pound, entitled "Justice According to Law." In the course of his discussion, directed primarily toward administrative agencies, he

calls attention to the tendency "to make determinations on the basis of consultations with witnesses in private or reports not divulged."

This tendency on the part of administrative agencies has been extended to courts of domestic relations and juvenile courts. The tendency generally is deplored but not condemned by Pound.

Here the tendency, as in this particular kind of case, is carried into positive statutory law, and this law specifically provides, as quoted, that the report "shall be available for inspection only upon the personal direction of the probate judge." We are not asked to hold this law unconstitutional. We are asked to order something done that the statute says need not be done.

We suspect that nobody is prejudiced by the failure to submit this report because the agents and representatives of this service society testified, and presumably their oral testimony would be consistent with their report.

But, in any event, this report was not offered in evidence, and the record shows that there was no demand that it be produced in the Probate Court. Not being a part of the record in that court, there is certainly no authority on our part to order it made a part of the record.

The motion is overruled.

As to the facts in this case, we quote directly from the opinion of the probate judge, who has stated them clearly and consistently with the record, and we can not improve upon his statement. It is:

"Barbara Hantz married Donald Mohr August 14, 1948. (Barbara was then 16.)

"Barbara Hantz was divorced from Donald Mohr September 22, 1949, in Stark County, Ohio. No mention was made of the child, Michael.

"Michael Arthur Hantz was born in Cleveland, Ohio, December 24, 1949.

"Birth record shows Barbara Ann Hantz (age 17) as the mother and sole parent.

"Barbara Hantz married James Thorpe August 20, 1950.

"Permanent surrender was given to the Family Service Society and Children's Bureau by the parents, James E. Thorpe and Barbara Hantz Thorpe, on September 29, 1950.

"The child was placed in the home of the petitioners on November 17, 1950.

"Petition of Thomas and Ruth Kane to adopt Michael Arthur Kane was filed April 26, 1951.

"Answer and consent of the Family Service Society was filed April 26, 1951.

"Motion of natural parents to withdraw surrender was filed May 22, 1951.

"Hearing was set for May 29, 1951.

"Hearing had June 29, 1951; July 23, 1951, and August 31, 1951.

"This cause has given the court much concern. Many legal questions have been raised.

"The facts show that the mother, age 17 years, gave birth to this child about three months after her first husband divorced her. Then she waited eight months and married James Thorpe, who claims he is the father of said child. About one month later, she and James Thorpe signed the permanent surrender. Two months later, the agency placed said child in the petitioners' home and five months later the petition to adopt said child was filed in this court."

And again discussing the question of the revoking of the surrender of the child by the natural parents he says:

"The court believes it was done May 22, 1951."

As we view it, there need be no discussion of other questions when two propositions are determined. They are:

First, was the surrender revocable and was it in fact revoked?

Second, would the proposed adoption be to the best interest of the child?

We must answer the first question in the affirmative and the second question in the negative.

As to the first question, it seems to us that we need go no further than to extend slightly the propositions announced by this court in the case of *French* v. *Catholic Community League,* 69 Ohio App., 442, 44 N. E. (2d), 113. The writer of this opinion concurred in the opinion in that case, written by Judge Sherick, and his views have not changed. In the *French case,* however, the agency had not moved "to place the care and custody of the child in the hands of another by adoption." In the instant case the move had been made, but the adoption had not been completed. It was not necessary in the *French case* to go further than was done. In the instant case we simply extend the doctrine and say that in our judgment there may be a withdrawal of consent or revocation at any time prior to the actual order of adoption, and taking this position, in view of the facts as stated hereinbefore, the conclusion is inevitable.

Now, as to the second question, what is to the best interest of the child? That is a serious and debatable thing, and no man can be sure in coming to a decision that such decision is right.

Under the record there can be no question about the qualification and capacity of the petitioners; nor can there be any question about the fitness of the natural parents, except as that might be questioned by their early indiscretion. The record shows that the petitioner, Thomas L. Kane, Jr., has an average annual income of $30,000. The record shows that the natural father, Thorpe, now has a good position with an income of $250 a month, or $3,000 a year, with

prospects of promotion. It cannot be said with any assurance that a child is necessarily better placed in a family with a $30,000 per year income than with another family with a $3,000 per year income.

On the opposite walls of the library in the home of the writer of this opinion there are two large steel engravings.

On the one side is one labeled:

"La Fille Adoptive
La Separation"

It portrays a gracious lady, obviously in beautiful surroundings and with wealth. It also portrays the peasant mother, having delivered her child, disappearing, bowed with grief. The look upon the child's face is one of bewilderment.

On the other wall is one labeled:

"La Vraie Mere
Le Retour"

There this child, now grown to young womanhood and beautifully garbed, returns to see her peasant mother, obviously in very modest circumstances. But the expressions on the faces of this mother and daughter are those of sheer joy.

For more than forty years these two pictures have been before the writer of this opinion whenever he entered his library.

The judgment is affirmed.

*Judgment affirmed.*

McClintock, P. J., and Putnam, J., concur in the judgment.