**ADOPTION** of Baby Randy Howard Mc-KINZIE, a Minor,

Opal Hutchens and Howard Hutchens, Petitioners, Appellants.

No. 7264.

Springfield Court of Appeals.

Missouri.

Feb. 8, 1955.

A. T. Parrish and E. C. Hamlin, Springfield, for appellants.

RUARK, Judge.

On July 1, 1953, Opal Hutchens and Howard Hutchens filed petition in the juvenile division of the Circuit Court of Greene County, Missouri, for adoption of Baby Randy Howard McKinzie. On the same day there was filed the written consent to said adoption which had been executed and acknowledged two days previously by one Lois Bell Burke. In such consent she stated that she was parent of the child. On August 5, 1953, the judge of said court, evidently having been informed by some source not shown in the record that the mother desired to revoke her consent, had what is designated as a preliminary hearing to determine whether such revocation should be permitted. There was no question of notice, the petitioners were present at least by their attorney, and the mother, Lois Bell Burke, was also present. She, being without counsel, was aided in presenting her evidence by the juvenile officer of Greene County. The only witness called was the mother, who testified in substance that she was not yet eighteen years old when the child was born (November 29, 1952); she had been married previously but such marriage had terminated in divorce in 1950; at the time the child was born she was living with Mr. and Mrs.

Hutchens, Mrs. Hutchens being her half-sister; about a month and a half after the birth she, Burke, got work and moved away, leaving the child with her half-sister and husband, who since that time had kept it in their home and cared for it; prior to the birth the question of adoption had been discussed with Mr. and Mrs. Hutchens and it had been agreed that they would adopt the child and give it their name. She said at that time such was her wish and she voluntarily signed the consent in the office of petitioners' attorney. After that, at a time not shown in the record, the mother married her present husband, Burke, and she testified that she had changed her mind in regard to her plans for the future of the child, desired that the adoption be not allowed and wished to have custody returned to her; that she was in position to assume care of the child; that her husband was going to school on the GI bill and worked in the afternoon; that she had discussed the subject with her husband and he felt the same way she did.

On cross-examination the witness stated that she lived with her half-sister for approximately five months before the baby was born and that her sister took care of her during that period and paid the bills. She admitted that prior to the birth of the child she had said she did not care anything for the child and thought she didn't ever want to see it but had changed her mind. She gave as one reason for her change of mind that she had been told by a representative of the State Department of Public Health and Welfare that the adoption by petitioners would not be permitted because there had been too many divorces in the family, but that was not the only reason, that "I want the child myself. He is my child. I want him."

On this evidence the court found that the consent of the parent had been revoked, wherefore it was ordered that the petition be dismissed and the infant returned to his natural mother.

The only error assigned by the appellant-petitioners is that "the court should have heard all of the evidence in the case and not just the evidence on the question of the mother's right to revoke her consent given for the adoption of the child." It is their contention that evidence should have been heard on the fitness of the petitioners and the fitness of the mother. No brief has been filed on behalf of the mother.

We think the petition for adoption should have been dismissed for insufficiency. Such petition named neither of the parents of the infant, but stated "that the mother of said child is a resident of Greene County, Springfield, Missouri; that the father of the above-mentioned child is unknown." RSMo 453.020, V.A.M.S., states the requirements of the petition, one of which is "the name of his parents, if known to the petitioner." Statutes of adoption, being repugnant to the common law, must be strictly construed (see post). That this requirement is not an empty technicality is illustrated by the situation here. The name of the infant is stated to be McKinzie, yet the subsequent consent is signed by one Burke, who claims to be the mother. The pleadings, in so far as possible, should make apparent who the parents are when they are known, and the relationship should not be left the subject of any doubt where it is possible to exclude such doubt by complying with the statute.

Although complaint is made that the court unduly restricted the inquiry, the record shows no offer of proof nor in fact any sustained objection. It does appear that at a point where the petitioners' attorney was cross-examining the mother in regard to the amount of house rent she was then paying there ensued a colloquy between court and counsel and the court did express the opinion that it had no right to require any qualifications of the natural mother except in a neglect proceeding.

However, the question intended to be raised is the power, or the extent of discretion, of the trial court in permitting the withdrawal of consent of the mother as affected by the provisions of sec. 453.050

(2), and since we believe this to be a matter of first impression and many lawyers and no doubt numerous judges have expressed a desire that the question be clarified as a matter of public interest, we are constrained to pay some attention to the subject.

■■■ While adoption is a practice of great antiquity, having been known to ancient civilizations and recognized in the Roman civil law, it did not come to us through the common law and it exists in this country solely and only by statute. In Missouri the first statute, enacted in 1857, provided for a partial adoption to the extent that one could make a person his heir by executing and recording a deed. Persons who did not join in the deed were not bound by it. Until 1865 the General Assembly by special act could declare one person to be the heir of another. In 1909 the law was expanded, still retaining adoption by deed but vesting some powers in the county and probate courts in reference to the adoption of orphan children. In 1917 was passed our first general adoption law. In 1947 the old sections were repealed and the present adoption law was enacted. Some of the significant additions to the law were the provision for a nine months waiting period, 453.080, the prohibition of transfer of custody without order of the juvenile court, 453.110, and the provisions of 453.050, subsection 2, "Any waiver mentioned in subsection 3 of section 453.040, or the written consent to adoption by any parent, shall be valid and effectual even though such parent was under the age of twenty-one years at the time of the execution thereof, *and any such waiver or consent shall be irrevocable without leave of the court having jurisdiction of the child given at a hearing, notice of which has been given to all interested parties.*" The italicized portion should be construed in the light of and along with the other provisions of the adoption act and also with consideration given to the law as it existed at the time of the enactment.

■■ Adoption, being purely a creature of statute and repugnant to the common law, has always been and still is strictly construed where it involves the destruction of the parent-child relationship against the consent of the parents. Hyman v. Stanley, Mo.App., 257 S.W.2d 388; Rumans v. Lighthizer, 363 Mo. 125, 249 S.W.2d 397; In re Adams, Mo.App., 248 S.W.2d 63; Robertson v. Cornett, 359 Mo. 1156, 225 S.W.2d 780, loc. cit. 784; In re Watson's Adoption, 238 Mo.App. 1104, 195 S.W.2d 331, loc. cit. 336; In re Perkins, 234 Mo. App. 716, 117 S.W.2d 686; Rochford v. Bailey, 322 Mo. 1155, 17 S.W.2d 941, loc. cit. 945.

In re Perkins, above, decided in 1938, states, 117 S.W.2d loc. cit. 691, "Conceding that the state, in its role of parens patriae, may, where the circumstances warrant, provide for the adoption of a child even as against the consent of its natural parents, yet it must always be borne in mind that the rights of natural parents to the custody and possession of their children are among the highest of natural rights, and, being so, are not to be interfered with by the state except where it clearly appears that the natural parents have forfeited their rights by their own misconduct and that the child's best interests will be served by allowing it to be adopted by some one else. Consequently, it is uniformly held as a simple matter of natural justice that adoption statutes are to be strictly construed in favor of the rights of natural parents, and that when controversy arises between natural parents and those who seek to destroy their parental status, every reasonable intendment is to be made in favor of the formers' claims."

■■ The old rule, and we think still the majority rule, has been that the consent of the parent as required by the statute is a *continuing* consent which must be in force and effect at the time the adoption decree is entered. This being so, the natural parent, in the exercise of her parental right, could revoke the consent at any time prior to judgment and thus deprive the court of

jurisdiction to proceed. 138 A.L.R., p. 1038, 2 C.J.S., Adoption of Children, § 21 (4) Withdrawal, p. 386.[1]

Prior to the 1947 act there can be no doubt that the law of Missouri was with the majority. It was said in Re Application of Graham, 1946, 239 Mo.App. 1036, 199 S.W. 2d 68, at loc. cit. 73, "It is the clear intent of the Adoption Code that the consent in writing of the parents or other guardian be had at the time of and as a requisite to a decree of adoption, unless one of the specified exceptions to that requirement exists. Rochford v. Bailey, 322 Mo. 1155, 1161, 17 S.W.2d 941.

"It cannot be denied that appellants in this case did on July 6, 1945, give their consent in writing to the adoption of the children. They also signed relinquishments of the children a few days previously and delivered over the children and their birth certificates to the respondents. However, they formally withdrew their consent before trial and in writing protested and objected to the petition and prayed for the custody of their children. Under the greater weight of authority they had a right to withdraw their consent before the judgment, and, in effect, they did so. 2 C.J.S., Adoption of Children, § 21(4), p. 386; State ex rel. Platzer v. Beardsley, 149 Minn. 435, 183 N.W. 956; In re Nelms, 153 Wash. 242, 279 P. 748."

However, in recent years there has been a growing tendency to limit the right of revocation of consent by the natural parent, as held in Re Adoption of a Minor, 79 U.S. App.D.C. 191, 144 F.2d 644. The annotation at 156 A.L.R., p. 1011, expresses this view as follows:

"* * * it must now be said, in view of the later cases (arising, it will be noted, in jurisdictions other than those represent-ed in the earlier annotation), that the trend of the more recent authority is toward the position that where a natural parent has freely and knowingly given the requisite consent to the adoption of his or her child, and the proposed adoptive parents have acted upon such consent by bringing adoption proceedings, the consent is ordinarily binding upon the natural parent and cannot be arbitrarily withdrawn so as to bar the court from decreeing the adoption, particularly where, in reliance upon such consent, the proposed adoptive parents have taken the child into their custody and care for a substantial period of time, and bonds of affection, in the nature of a 'vested right,' have been forged between them and the child."

This, however, is disputed by the Supreme Court of Arkansas in the case of Combs v. Edmiston, 216 Ark. 270, 225 S.W. 2d 26, wherein it is said, 225 S.W.2d loc. cit. 28, "But several more recent decisions are also there listed as following the general rule as first stated. Among these are Green v. Paul, 212 La. 337, 31 So.2d 819; Wright v. Fitzgibbons, 198 Miss. 471, 21 So.2d 709; In re Application of Graham, 239 Mo.App. 1036, 199 S.W.2d 68; French v. Catholic Community League, 69 Ohio App. 442, 44 N.E.2d 113; Adoption of Capparelli, 180 Or. 41, 175 P.2d 153." But it will be noted that this court, in considering the situation before it, said that under the facts it was unnecessary to determine whether the consent previously given could be arbitrarily revoked at any time; that in the instant case the consent had been withdrawn before the entry of an interlocutory order as required by statute, and, "There can be no doubt that appellee was acting under pressure of embarrassing and humiliating circumstances at the time she signed the consent for adop-

---

1. For some recent cases from other states, see In re Adoption of Susko, 1949, 363 Pa. 78, 69 A.2d 132; In re Adoption of Schult, 1951, 14 N.J.Super. 587, 82 A. 2d 491; State ex rel. Towne v. Superior Court, 1946, 24 Wash.2d 441, 165 P.2d 862; Petition of Thompson, 1949, 337 Ill. App. 354, 86 N.E.2d 155; Green v. Paul, 1947, 212 La. 337, 31 So.2d 819; Adop-tion of Capparelli, 1946, 180 Or. 41, 175 P.2d 153; French v. Catholic Community League, 1942, 69 Ohio App. 442, 44 N.E. 2d 113; In re Adoption of Kane, 1952, 91 Ohio App. 327, 108 N.E.2d 176; Boyed v. Wilson, Tex.Civ.App.1953, 258 S.W. 2d 223; Adoption of Harvey, 375 Pa. 1, 99 A.2d 276.

tion. She was a member of a good Christian family and was doubtless fearful of the scandal, shame and unhappiness that might be expected to follow to her child, family and self if she kept the child. Under the pressure of events, she also misjudged the depth of tolerance displayed by a compassionate father. * * * The consent was revoked before the lapse of a period of time sufficient to show 'vested rights' in favor of the adoptive parents with respect to the child. The grounds of estoppel usually invoked in those cases where withdrawal of consent has been denied are not present here. Under all the circumstances, we conclude that the written consent executed by appellee should not be adjudged a final and irrevocable act and was effectively withdrawn before entry of an interlocutory order."

Practically all of the cases found in jurisdictions where there is no applicable revocation statute and which apply the "modern" rule hold that the withdrawal or refusal to permit withdrawal rests in the sound discretion of the court. Some of them use the words "for good cause shown." The discussions usually base denial of revocation upon (1) principles of contract; (2) principles of estoppel or other equitable grounds; (3) public policy favoring the adoption of illegitimate children; (4) welfare of the child as apparent from the facts.[2]

In a great many of these cases, however, the question of right of withdrawal, or opposition of the parent, came at a hearing on the adoption petition itself and it is sometimes difficult to separate which of the items are considered by the court in denying the revocation and which are applied to the judgment decreeing the adoption. Some of them stress the fact that arbitrary, or too generous permission for, withdrawal of consent would lay the proposed adoptive parents open to uncertainties and possibility of blackmail. The revocation is frequently denied because the child has been taken into the home of the proposed adoptive parents and kept for such length of time that ties of affection have developed. A number of them have considered the acts of the would-be foster parents in caring for the child, such as building a nursery room, taking out insurance policies for education and having the child treated and cured of ailments. These cases treat the situation as calling for the application of the doctrine of equitable estoppel. On the other hand, a number of the cases, while denying the right of arbitrary revocation exists, have permitted such because of the circumstances surrounding the original consent; they being such that the consent of the mother, due to mental, physical and financial pressures, coupled with urgings, advice or entreaties by interested parties, was not actually free and voluntary.

The cases which hold that revocation may be permitted at the discretion of the court and for good cause shown we think are no more than judicial expressions of what is now provided by the Missouri statute, which recognizes the right of revocation but provides there can be none except by leave of court after a hearing and notice. The section itself does not furnish the juvenile court any rule or guide for the exercise of its discretion (an examination of the cases which hold in favor of limiting the right of revocation will indicate the difficulty of fixing any exact rule). It is obvious that in Missouri the right of revocation

2. For cases considering such questions since the annotation in 156 A.L.R., see Petition of Dickholtz, 341 Ill.App. 400, 94 N.E.2d 89; Weisbart v. Berezin, 347 Ill.App. 13, 105 N.E.2d 814; Keheley v. Koonce, 85 Ga.App. 893, 70 S.E.2d 522; In re Adoption of Cannon, 243 Iowa 828, 53 N.W.2d 877; Bailey v. Mars, 138 Conn. 593, 87 A.2d 388; Welsh v. Young, Ky., 240 S.W.2d 584; In re Adoption of Anonymous, 198 Misc. 185, 101 N.Y.S.2d 93; Driggers v. Jolley, 219 S.C. 31, 64 S.E.2d 19; Wright v. Fitzgibbons, 198 Miss. 471, 21 So.2d 709; Kalika v. Munro, 323 Mass. 542, 83 N.E.2d 172; Ex Parte Schultz, 64 Nev. 264, 181 P. 2d 585; In re Adoption of D, Utah, 252 P.2d 223; Lavigne v. Family & Children's Society of Elizabeth, 18 N.J.Super. 559, 87 A.2d 739; In re Adoption of Morrison, 260 Wis. 50, 49 N.W.2d 759, 51 N.W.2d 713; Sessions v. Oliver, 204 Ga. 425, 50 S.E.2d 54; Williams v. Liles, Tex.Civ.App., 245 S.W.2d 551.

is no longer dependent upon the arbitrary whim or caprice of the parent. Otherwise there would have been no reason or necessity for including the provision. The fact that notice and hearing are required indicates that revocation may be denied for certain causes or reasons. The question we attempt to answer is, for what causes and for what reasons?

■■ Construing this particular portion of the act with and in the light of the other provisions, as we should, In re McAvoy's Adoption, 237 Mo.App. 1099, 173 S.W.2d 108, and calling upon the aid furnished by decisions in other states, it is our conclusion that the provision for revocation only by leave of court does not destroy in toto the right of the mother to call back unto herself the sacred relationship of parent and child. But she may not arbitrarily undo and destroy that which she herself has permitted to be set in motion. It must be remembered that the ultimate purpose of adoption statutes is the welfare of the child, and the wishes and wants of the natural parents and also of the proposed adoptive parents can be considered as only secondary to this ultimate purpose.

We think it unwise to attempt to outline and definitely fix the boundaries or the area covered by the court's discretion, but some generalizations can and should be made.

■■ It would be good cause if it were shown that the original consent was given by one who was legally incapable of giving it, or who was a victim of fraud or duress to the extent that the consent was not actual. To these might be added what, for want of better expression, could be termed duress by force of circumstances, for we must recognize (and such is frequently shown in cases from other states) that in a great many instances the consent is given by an immature mother oftentimes in the depth of humiliation, in fear of scandal and condemnation and in desperate worry concerning her future and the future of her child. Often, too, this situation finds the mother not only in mental stress but in a delicate physical condition, in extreme financial difficulties and sometimes subject to freely given advice and entreaties of relatives, friends, doctors and upon occasions nurses and agents of maternity homes and child-placement agencies. We think the court could properly consider all these factors in determining whether the consent, although not obtained by legal fraud or legal duress, was the free, open and voluntary act of a person in full possession of her faculties. In so considering we think the court could properly in its discretion inquire into the conduct of the mother in the interval between the giving of consent and her application to revoke, also the circumstances of the mother at the time of the hearing in so far as is necessary to determine whether the conditions which existed at the time of the giving of consent have continued or ceased to exist. But the fact she was an unwed mother or that her financial position is insecure are not factors which, of themselves, require the denial of revocation. The mental capacity of the mother at the time she revokes could in some instances be a subject for consideration.

■■ We think a proper exercise of judicial discretion would be aided by considering the situation of the proposed adoptive parents in regard to a change of condition on their part in order to determine whether or not what has been called an equitable estoppel has arisen in their favor. This might apply where the adoptive parents have taken the child into their custody and care for a substantial period of time, and bonds of affection in the nature of a "vested right" have been forged between them and the child. Under our statute a transfer of custody (with some exceptions) must first be ordered by the court and a waiting period is required before the adoption can become final. The adoptive parents should, not only for their own good but in the interests of the welfare of the child, have some assurance that after they have done what has been expected of them and the new relationship has become concrete and fixed, it will not be destroyed except and only after the court having jurisdiction has carefully weighed the circumstances

and given consideration to the outlay of affection, time and even material things on behalf of the child after they have once taken it into their home and assumed the responsibility of parenthood. In this respect the court could lean more readily toward the revocation of consent where it comes before there has been a lawful placing of custody, for until such has been done the adoptive parents have little right or reason to hope, believe or plan that the adoption will ultimately be decreed.

 We think also that the welfare of the child should. be considered on such inquiry, but only in and limited to the question as to whether or not it will be materially affected by the change of condition wrought by the discontinuance of the existing situation. All these things, and no doubt more which we have failed to mention, might properly be considered by the court and weighed and balanced against each other in determining whether the revocation should be allowed, and each case must be decided on its own circumstances. We do not intend by these expressions that the trial court shall enter into a hearing to determine the ultimate or relative fitness of the parties or the ultimate best interests of the child. These are matters reserved for the final hearing on the adoption petition. It might well be the court would in its discretion determine there did not exist sufficient good cause to permit the withdrawal, and still in the hearing on the main case consider that the natural parent was desirous of reclaiming her child and that under all the circumstances the best interests of such child would be furthered by denying the adoption. But if on the other hand the court should find that the revocation should be allowed, the consent (which is jurisdictional) has been withdrawn and the more quickly the proceedings can be terminated the better it will be for all concerned.

In this case there is no showing that a preliminary order authorizing transfer of custody had been made, and the dates indicate to the contrary. Nor was there any evidence to show the development of ties of affection, or any material change of position, which would make it harmful either to the petitioners or the child in event the consent be revoked.

It is true that the mother filed no written withdrawal of consent, but she appeared in open court and expressed her desires under oath. We think the trial court properly considered such as an application to revoke, and that his dismissal of the petition for the stated reason that the consent had been revoked had the force and effect of granting the leave required by statute. Such being the case, the petition was properly dismissed and the judgment should be and is affirmed.

McDOWELL, P. J., and STONE, J., concur.