**In re ADOPTION of ADA.**

**GLB and MAB, Petitioners–Respondents,**

v.

**RKA, Appellant.**

**No. 16340.**

Missouri Court of Appeals, Southern District, Division Two.

May 9, 1990.

Motion for Rehearing or to Transfer to Supreme Court Denied May 31, 1990.

Luanne Yocom, Springfield, for petitioners-respondents, GLB and MAB.

Louis J. Nolan, Springfield, for appellant, RKA.

MAUS, Judge.

This proceeding had its genesis when RKA (mother), in the manner prescribed by § 453.030[1], executed her consent to the adoption of her daughter by GLB and MAB, his wife (petitioners). Thereafter, the petitioners filed their petition, in customary form, seeking legal custody of the child and subsequently a decree of adoption. Before a hearing upon the petition, the mother filed a motion for leave of court to withdraw her consent to the adoption. Following a hearing, the motion was denied and the mother appeals.

At the outset this court, on its own motion, must determine if that denial is, within the meaning of § 512.020, a final judgment. It has been held that an order finding parental consent not necessary and transferring custody is not a final judgment. *In re Adoption of D__ R__ E__,* 696 S.W.2d 882 (Mo.App.1985). The same is true of the denial of a natural mother's motion to dismiss an adoption petition. *Matter of N.B.,* 710 S.W.2d 394 (Mo.App. 1986). However, a denial of a transfer of custody as a prerequisite to adoption is regarded as effectively disposing of the issues in the case. *Matter of Williams,* 672 S.W.2d 394 (Mo.App.1984).

The issue before the trial court was whether or not the mother's consent to adoption could be revoked because of misrepresentation of the contents and legal effect of the consent she executed. The mother's motion could have been filed before a petition for adoption was filed and independently of such a petition. The status of the mother as a party in respect to an adoption proceeding was at issue. There is no reason the determination of this status is not final. Such finality is desirable to lend stability to the transfer of lawful and actual custody and subsequent bonding period of at least nine months. § 453.080. The judgment of the court denying the motion to withdraw disposes of all issues raised by that motion and is appealable. This has been tacitly recognized. *In Interest of W.H.J.,* 511 S.W.2d 795 (Mo.1974).

Before stating a synopsis of the testimony at the motion hearing it is necessary that this court, again on its own motion, resolve an issue not presented by the parties. The mother's consent to the adoption was executed on May 21, 1987. The petition for adoption, with that consent attached, was filed on October 5, 1987. The motion to withdraw the consent was filed on October 20, 1987, and heard on March 23, 1989. It is obvious the mother's motion to withdraw her consent must be determined under the adoption code as amended in 1985.

The adoption code enacted in 1947 contained the following provision. "Any waiver mentioned in subdivision (3) of section 453.040, or the written consent to adoption by any parent, shall be valid and effectual even though such parent was under the age of twenty-one years at the time of the execution thereof, *and any such waiver or consent shall be irrevocable without leave of the court having jurisdiction of the child given at a hearing, notice of which has been given to all interested parties.*" (L.1947 V.II p. 213). § 453.050.2 RSMo 1978. (Emphasis added.)

"Prior to the 1947 revamping of the adoption procedure, Missouri required

---

1. References to statutes and rules are to RSMo 1986 and Missouri Rules of Court (1990), except where otherwise specifically noted.

continuing consent to adoption. There was, therefore, a right to withdraw consent. *Application of Graham*, 239 Mo. App. 1036, 199 S.W.2d 68 (1946). This was, at that time, the majority rule. Id. at 73; Annotation, 138 A.L.R. 1038 (1942).

With the passage of the present § 453.050, RSMo 1978, in 1947, consent was made irrevocable 'without leave of the court.' This has been interpreted as giving the trial court 'the discretionary power and responsibility of determining whether the consent should be revoked.' *In re Mayernik*, 292 S.W.2d 562, 570 (Mo.1956)." *Matter of P.A.W.*, 623 S.W.2d 592, 594 (Mo.App.1981).

The 1985 amendment rewrote § 453.050. Thereafter, the emphasized provision has been omitted from § 453.050. No appellate decision in this state has determined the effect of that omission.

There are compelling reasons why the withdrawal or revocation of a consent to an adoption executed in accordance with § 453.030 should be subject to judicial supervision. To hold otherwise, would make an adoption, decided upon by would-be adoptive parents, upon the basis of parental consent, to be subject to the whim of a natural parent who initially consented. The reasons are more fully discussed in *In re Adoption of Hecker*, 448 S.W.2d 280 (Mo.App.1969). Also see Annot., Right to Withdraw Consent to Adoption, 74 A.L. R.3d 421 (1976).

"In those jurisdictions where there is no statutory provision for withdrawal of consent, the modern trend is toward limiting the right of revocation. '[T]he right to withdraw generally is held dependent upon a variety of factors, including the nature of the adoption proceedings, the reasons for seeking withdrawal, all of the attendant circumstances and policy considerations, and the particular stage of the adoption proceedings at which the withdrawal of consent is made.' Annotation, 74 A.L.R.3d 421, 425 (1976). Missouri cases have noted this trend. *In re*

*Mayernik, supra; In re Adoption of Hecker*, 448 S.W.2d 280 (Mo.App.1969); *In re G.K.D.*, 332 S.W.2d 62 (Mo.App. 1960); *Adoption of McKinzie*, 275 S.W.2d 365 (Mo.App.1955)." *Matter of P.A.W.*, 623 S.W.2d at 594.

That trend was, at least in part, the basis for holding that consent to termination of parental rights, authorized by § 211.447.2(1), can be revoked only upon approval of the court having jurisdiction of the child. *Matter of P.A.W., supra.*

The following is the statutory mandate.

"The provisions of sections 453.010 to 453.400 shall be construed so as to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent and stable home." § 453.005.

Another relevant section provides "[a] writ of summons and a copy of the petition shall be served on: (1) Any person, agency, organization or institution whose consent to the adoption is required by law *unless such consent is filed in court....*" § 453.060.1(1). (Emphasis added.) This authorizes a decree of adoption without service upon a consenting parent. Section 453.030 prescribes the formalities with which such a consent must be executed. That section further provides: "The written consent to adoption required by subsection 3 of this section shall be valid and effective even though the parent consenting was under eighteen years of age at the time of the execution thereof." § 453.030.4. Such provisions are evidence of a legislative intent that revocation of parental consent is subject to judicial supervision. Construing the adoption code as a whole, in the light of the foregoing mandate and in acknowledgment of the foregoing trend, this court holds the adoption code yet gives the court having jurisdiction of the child "the discretionary power and responsibility of determining whether the consent should be revoked." *In re Mayernik*, 292 S.W.2d 562, 570 (Mo.1956).

The analysis to be employed and factors to be weighed in the exercise of that discre-

tion are the subject of varying expressions. See Annot., Right to Withdraw Consent to Adoption, supra. Three well established factors dispositive of this case have been succinctly stated.

> "It would be good cause if it were shown that the original consent was given by one who was legally incapable of giving it, or who was a victim of fraud or duress to the extent that the consent was not actual. To these might be added what, for want of better expression, could be termed duress by force of circumstances, for we must recognize (and such is frequently shown in cases from other states) that in a great many instances the consent is given by an immature mother oftentimes in the depth of humiliation, in fear of scandal and condemnation and in desperate worry concerning her future and the future of her child." *Adoption of McKinzie,* 275 S.W.2d 365, 372 (Mo.App.1955).

"But the fact she was an unwed mother or that her financial position is insecure are not factors which, of themselves, require the denial of revocation." *Id.*

"This triumvirate of cases makes certain leave of court to withdraw written consent to adoption will not be awarded for the mere asking or upon the whim of the consenter." *In re D——,* 408 S.W.2d 361, 366 (Mo.App.1966).

■ The mother first asserts the trial court erred because she did not knowingly, voluntarily consent to the adoption. She testified that she placed the baby in the care of the petitioners (her great aunt and her husband) because of financial problems. The mother had only a seventh grade education. She further testified that about eight weeks after the petitioners had the baby, they asked her to sign a document represented to her as merely granting petitioners temporary legal custody. She signed without reading it and then went to the home of a notary public.

The petitioners testified they discussed with the mother the fact they were becoming attached to the child and did not want to keep her any longer unless they could adopt her. The mother was agreeable. When the document was ready, in response to a phone call from petitioners, the mother came to their home. The consent was read to her. She was aware of its contents. The three of them went to the notary public's home where the mother signed and acknowledged the consent. The notary public testified she asked the mother if she was sure she wanted to do this. The mother replied yes and signed the consent in the presence of the notary public.

No findings of fact or conclusions of law were requested or made. All fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01. The trial court obviously rejected the testimony of the mother and found the execution of the consent to be a knowing, voluntary act and that she was merely attempting to change her mind.

■ By a second point, the mother contends the trial court erred because there was insufficient evidence of the petitioners' circumstances to establish the adoption was in the child's best interests. It has been acknowledged that the withdrawal of a consent should not be determined upon the sole basis of whether the prospective adoptive parents or natural parents offer the child the "more advantageous" home. The petitioners' circumstances that establish a contemplated adoption cannot be in the child's best interest, may properly be a decisive factor in permitting revocation. *Adoption of McKinzie, supra.* However,

> "[w]e think also that the welfare of the child should be considered on such inquiry, but only in and limited to the question as to whether or not it will be materially affected by the change of condition wrought by the discontinuance of the existing situation. All these things, and no doubt more which we have failed to mention, might properly be considered by the court and weighed and balanced against each other in determining whether the revocation should be allowed, and each case must be decided on its own

circumstances. We do not intend by these expressions that the trial court shall enter into a hearing to determine the ultimate or relative fitness of the parties or the ultimate best interests of the child. These are matters reserved for the final hearing on the adoption petition. It might well be the court would in its discretion determine there did not exist sufficient good cause to permit the withdrawal, and still in the hearing on the main case consider that the natural parent was desirous of reclaiming her child and that under all the circumstances the best interests of such child would be furthered by denying the adoption. But if on the other hand the court should find that the revocation should be allowed, the consent (which is jurisdictional) has been withdrawn and the more quickly the proceedings can be terminated the better it will be for all concerned." *Adoption of McKinzie,* 275 S.W.2d at 373.

Also see Annot., Right to Withdraw Consent to Adoption, supra. It is appropriate to emphasize that this opinion should not be construed to imply a parent, who has executed a valid consent to an adoption, has a right to participate as a party in the final hearing.

In this proceeding the burden of proof was upon the mother to establish good cause for the withdrawal of her consent. *In re Adoption of Hecker, supra.* She did establish that she had used illegal drugs, was divorced from the child's father, and was living with a man to whom she was not married. The record contains no hint the petitioners are not fit adoptive parents. The mother's second point has no validity.

The judgment of the trial court is supported by the evidence and does not erroneously declare or apply the law. Under the standards of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), it is affirmed.

HOGAN, C.J., and FLANIGAN, P.J., concur.