In the Interest of BABY GIRL P, Plaintiff.

E.P., Appellant,

v.

A.M. and L.M.; Adoptions of Babies and Children, Inc., Respondents.

No. WD 64497.

Missouri Court of Appeals, Western District.

April 12, 2005.

Kimberly A. Carrington, Kansas City, MO, for appellant.

William F. O'Sullivan, Kansas City, MO, for plaintiff.

Sanford P. Krigel, Kansas City, MO, for respondents, A.M. & L.M.

James A. Waits, Kansas City, MO, for respondent, Adoptions of Babies & Children.

Before PAUL M. SPINDEN, P.J., VICTOR C. HOWARD and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Birth mother E.P. files this appeal from the order of the Jackson County Circuit Court denying her request that she be permitted to withdraw her consent to the termination of her parental rights and the adoption of her daughter Baby Girl P. Because we find that the court erred in requiring that E.P.'s withdrawal be in writing under section 453.030.7,[1] we hereby reverse and remand for further proceedings.

E.P. is a thirty-year-old Spanish-speaking woman who decided while she was pregnant with Baby Girl P. to place the child for adoption. Arrangements were made in April 2004 for E.P. to meet with a birth parent coordinator from Adoptions of Babies and Children Inc. (respondent ABC Adoptions), a private adoption agency. She thereafter met on seven or eight occasions with the agency's coordinator, Ms. Catherine Welch, to develop a social history and adoption plan. Ms. Welch speaks and understands little Spanish and always communicated with E.P. through an interpreter who was available at Truman Hos-

---

1. Unless otherwise indicated, all statutory references are to RSMo. (2000).

pital, where E.P. was getting prenatal care. A.M. and L.M., respondents, were selected as the adoptive couple and met with E.P.'s approval.

Baby Girl P. was born on June 9, 2004. An adoption consent hearing was conducted on June 18 before a family court commissioner. E.P., who was provided an interpreter, said she was willing to give up her parental rights to Baby Girl P. The commissioner accepted her consent as knowing and voluntary and ordered the transfer of temporary custody of Baby Girl P. to ABC Adoptions for later placement. A.M. and L.M. took temporary custody of the child after the consent and temporary custody hearings and have had custody ever since. Between June 18 and 22, E.P. attempted orally to withdraw her consent to the termination of her parental rights.

On Tuesday, June 22, a circuit court judge signed the judgment adopting the commissioner's findings and recommendations and accepted E.P.'s consent. On July 2, ten days after the circuit court had accepted E.P.'s consent, E.P. filed a *pro se* Motion to Withdraw Consent to Termination of Parental Rights and Consent to Adoption and Motion for Rehearing, asking that her consent be withdrawn. Legal counsel was appointed to assist E.P., and the matter was set for a hearing on July 29. An amended motion was filed, alleging that E.P. timely withdrew her consent and that duress due to a "force of circumstances," misrepresentation, and possible fraud prevented E.P. from knowingly executing the consent.

A two-day hearing was conducted by a family court commissioner, who found in his *Nunc Pro Tunc* Findings and Recommendations that "the mother did not execute a withdrawal of consent prior to entry of judgment on June 22, 2004," and that "her failure to timely file or execute such withdrawal of consent" was not excused by "any fraud, mistake, coercion, misrepre-

sentation, duress, duress by 'force of circumstances' or any other conduct." The order of temporary custody remained in effect. The commissioner's findings were adopted and confirmed without modification by a family court judge on August 5. E.P. filed a motion and amended motion for rehearing on August 11 and 20, and both were denied by court order on August 23. This appeal followed.

E.P. raises three issues on appeal: that the court erred in denying her motion to withdraw her consent to adoption in that (i) she had effectively withdrawn her consent before it had been accepted and approved by a judge; (ii) she was under duress from a "force of circumstances" when giving her consent; and (iii) the consent was obtained through misrepresentation that prevented E.P. from providing a knowing and voluntary consent, and she was precluded from formally withdrawing the consent due to misrepresentation or for other "good cause."

■ In cases arising under our adoption law, we sustain the trial court's judgment unless there is no substantial evidence to support it, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law. *In re Adoption of H.M.C.,* 11 S.W.3d 81, 86 (Mo.App. W.D.2000).

■ Adoption, unknown to common law, is purely a creature of statute. *In re Adoption of McKinzie,* 275 S.W.2d 365, 369 (Mo.App.1955). Our first general adoption law was enacted in 1917, and a number of changes have been made to the law since then. *Id.* Until 1947 the legislature required continuing consent to adoption, and birth parents could revoke that consent at any time and for any reason until the adoption hearing. *In re Baby Girl ____,* 850 S.W.2d 64, 70 (Mo. banc 1993); *McKinzie,* 275 S.W.2d at 369–70. In 1947 the statute was revised, and the written consent was made irrevocable

without leave of court. *Baby Girl* ____, 850 S.W.2d at 70. A 1985 revision omitted the language regarding the irrevocability of the written consent and court review, *id.*, but the courts continued to rule that a birth parent's change of mind was not a sufficient basis on which his or her consent could be withdrawn. *In re R.V.H.*, 824 S.W.2d 28, 30–31 (Mo.App. W.D.1991); *In re Interest of A.M.K.*, 723 S.W.2d 50, 53 (Mo.App. E.D.1986).[2]

■■■ Today, the statute provides, briefly and without qualification, that the written consent required in cases involving the adoption of children under the age of 18 "may be withdrawn anytime until it has been reviewed and accepted by a judge." § 453.030.7. In 2003 the Eastern District Court of Appeals had occasion to address section 453.030.7, and agreed with the birth mother therein that she had the absolute right to withdraw her consent before a court had accepted it. *In re Interest of K.L.S.*, 119 S.W.3d 548, 551 (Mo.App. E.D.2003). There is no longer any question about the birth parent's motivation in seeking the withdrawal; this is simply irrelevant under the statute. Because the court in *K.L.S.* was considering a written motion to withdraw consent, the issue that remains is whether an oral expression of intent to withdraw the consent constitutes an effective withdrawal of the birth parent's consent under section 453.030.7.

■■■ The family court commissioner found that E.P. did not "execute a withdrawal of consent prior to the entry of judgment on June 22, 2004." The statute does not, however, by its terms require that a withdrawal of consent be executed, or in writing.[3] The statute contains no direction to a birth parent as to how to go about withdrawing the written consent or to whom notice of such withdrawal is to be directed. § 453.030.7. Because adoption involves the destruction of the parent-child relationship, we strictly construe the adoption statutes in favor of the rights of the natural parents. *McKinzie*, 275 S.W.2d at 369; *see also K.L.S.*, 119 S.W.3d at 551 ("We have regularly noted the sanctity of the parent-child relationship and have held that any judicial termination of such a relationship is an exercise of awesome power that must be tempered and controlled by strict and literal compliance with the statutes."); *In re Interest of G.*, 389 S.W.2d 63, 65 (Mo.App.1965) ("Adoption statutes are to be strictly construed against the deprivation of natural parents in regard to the parent and child relationship.").

Accordingly, the circuit court erred in requiring that a withdrawal of consent be in writing. For this reason, the case must be remanded to determine whether, under the circumstances of this case, E.P. orally communicated a withdrawal of consent under section 453.030.7 before the trial court accepted her previously given consent.

Because we have determined that the circuit court made an error of law, we will not consider the remaining issues. We reverse the circuit court's order denying E.P.'s request to withdraw her consent and remand for further proceedings consistent with this opinion.

PAUL M. SPINDEN, P.J., and VICTOR C. HOWARD, J. concur.

---

**2.** *See also Matter of P.A.W.*, 623 S.W.2d 592, 594 (Mo.App.1981) (noting the modern trend, among jurisdictions with no statutory provisions for withdrawal of consent, toward limiting the right of revocation).

**3.** As a legal term, "execute" means to make a document final by signing it. BLACK'S LAW DICTIONARY 609 (8th ed.2004).