188 S.W.3d 6 (2006)
In the Matter of BABY GIRL P., Plaintiff.
E.P. (Mother), Appellant,
v.
A.M. & L.M., Respondents,
Adoptions of Babies and Children, Inc., Respondent.
No. WD 65656.
Missouri Court of Appeals, Western District.
January 3, 2006.
Application for Transfer Denied February 28, 2006.
Application for Transfer Sustained April 6, 2006.
Case Retransferred May 2, 2006.
Opinion Readopted May 9, 2006.
Application for Transfer Denied May 30, 2006.
*8 Edward Moore, Kimberly Carrington, Kansas City, for appellant.
William O'Sullivan, Kansas City, for plaintiff.
Sanford P. Kriegel, James A. Waits, Kansas City, for respondent.
Application for Transfer to Supreme Court Denied February 28, 2006.
Court of Appeals Opinion Readopted May 9, 2006.
Application for Transfer to Supreme Court Denied May 30, 2006.
RONALD R. HOLLIGER, Judge.
E.P., the biological mother of Baby Girl P., appeals the circuit court's judgment denying her motion for leave to withdraw her consent to the adoption of Baby Girl P. E.P. argues on appeal that the substantial weight of the evidence showed (1) E.P. orally withdrew her consent before the circuit judge signed the order approving E.P.'s consent to adoption of Baby Girl P.; (2) E.P. should be allowed to withdraw consent because she was subject to a force of circumstances at the time she gave consent; and (3) E.P., in consenting to the adoption, reasonably relied on misrepresentations by the adoption agency, and E.P. therefore has good cause for leave to withdraw consent. E.P. also argues that (4) the circuit judge misapplied the law of the case by ignoring this court's opinion in a prior appeal in this case, which stated that "E.P. attempted orally to withdraw her consent to the termination of her parental rights" prior to the circuit judge's order approving E.P.'s consent. In re Baby Girl P., 159 S.W.3d 862, 864 (Mo. App.2005). Because we find the circuit court's judgment is supported by substantial evidence, is not against the weight of the evidence, and does not misapply the law of the case, we affirm.

Facts
In October 2003, E.P. learned that she was pregnant. When she informed the father of her pregnancy, he told her she could "sell [the baby], give it away, [or] keep it," but he did not want to care for it. On Halloween 2003, the father returned to his home outside the U.S. and has not come back. In November 2003, during a prenatal care visit, E.P. told a hospital social worker that she wished for the child to be adopted. The social worker helped E.P. contact a private adoption agency, Adoption of Babies and Children, Inc., ("ABC") to arrange adoption. Because E.P. speaks Spanish and not English, an interpreter was employed during conversations between E.P. and other interested persons, and to read English documents. E.P. herself initially located an adoptive *9 family, but in March or April of 2004, she decided that family might not adequately care for the child. At E.P.'s request, Catherine Welch, an employee of ABC, located an alternate adoptive family, and E.P. met with and approved the new couple. Throughout her pregnancy, E.P. never equivocated about her desire to place her child for adoption.
Baby Girl P. was born June 9, 2004, at 1:33 A.M. On June 11, 2004, after the 48-hour waiting period required by section 453.030.5,[1] E.P. met with her attorney and an interpreter, Enedina Wilbers, to review and sign the consent form for Baby Girl P.'s adoption. E.P.'s attorney finished that meeting by giving her his business card and telling her she could contact him through Ms. Wilbers if she had any questions. Ms. Wilbers also gave E.P. contact information. On Friday, June 18, 2004, the family court commissioner held a hearing[2] with E.P., her attorney, Catherine Welch, and an interpreter. At the hearing, E.P. indicated that she understood that by consenting to adoption, she was giving up her rights to Baby Girl P., and that this was her intention. The commissioner recommended to the circuit court that E.P.'s consent be accepted, and the circuit court entered judgment adopting the commissioner's findings on Wednesday, June 22, 2004.
On July 2, 2004, E.P. filed a motion for leave to withdraw her consent, and the commissioner held a hearing on that motion on July 29. That hearing included testimony about several conversations that took place on Saturday, June 19, and Tuesday, June 21. E.P. spoke with Catherine Welch on both dates. Ms. Welch, who does not speak Spanish, testified that she did not fully understand E.P. but that she believed E.P. had called because she was grieving over giving up her child. Therefore, Ms. Welch arranged for Iberty Gedeon, a bilingual therapist, to contact E.P. on June 21. E.P. testified that she orally expressed her desire to withdraw consent to the adoption in conversations with both Ms. Welch and Ms. Gedeon. Ms. Gedeon testified that when she talked to E.P. on June 21, E.P. said she wanted her baby back. E.P. also called Ms. Wilbers, the interpreter, on June 21. Ms. Wilbers testified that, during that June 21 conversation, E.P. did not say she wanted her baby back. Ms. Wilbers also testified that E.P. asked for help contacting Ms. Welch, but E.P. did not ask to speak to her attorney.
The family court commissioner found that E.P. did not "execute" a withdrawal of consent prior to the entry of judgment affirming the consent on June 22, 2004. E.P. appealed, arguing among other things that "execute" implies a written withdrawal, and that section 453.030.7, which allows withdrawal of consent any time prior to the judge's acceptance of the consent, does not require a writing to effectively withdraw consent. This court agreed with E.P. on that point and held that "the circuit court erred in requiring that a withdrawal of consent be in writing." In re Baby Girl P., 159 S.W.3d at 865. We remanded to the circuit court "to determine whether, under the circumstances of this case, E.P. orally communicated a withdrawal of consent ... before the trial court accepted her previously given consent." Id.
*10 On remand, the circuit court made extensive and specific findings of fact concluding that E.P. and Ms. Gedeon were not credible; consequently, the circuit court gave their testimony no weight. The court found that E.P. did not orally withdraw consent prior to the circuit court's judgment entered on June 22, 2004. E.P. again appeals.

Discussion

Standard of Review
In a court-tried case, the judgment will be sustained unless it is not supported by substantial evidence, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); In re Adoption of H.M.C., 11 S.W.3d 81, 86 (Mo.App.2000). "The appellate court will defer to the trial court's determination of credibility and to its resolution of conflicts in the evidence. The facts and reasonable inferences therefrom are reviewed in the light most favorable to the trial court's order." In re Adoption of H.M.C., 11 S.W.3d at 86 (citation omitted). "[T]he appellate court defers to the trial court on factual issues because it is in the better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." Id. at 86-87. "The trial judge has absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court, and its findings on witness credibility are never reviewable by the appellate court." Milligan v. Helmstetter, 15 S.W.3d 15, 24 (Mo.App.2000) (citing Herbert v. Harl, 757 S.W.2d 585 (Mo. banc 1988)).

I.
In her first point, E.P. argues that the weight of the evidence showed that she orally withdrew consent to the adoption prior to the judge's acceptance of the consent. Section 453.030.7 allows withdrawal of consent "anytime until it has been reviewed and accepted by a judge." Consequently, E.P.'s consent remained revocable until June 22, when the circuit court judge entered the order adopting the commissioner's recommendations.
Given the trial court's rejection of the testimony from E.P. and Ms. Gedeon, finding that they were not credible witnesses, we are constrained under the standard of review to determine whether the record other than the testimony of E.P. and Ms. Gedeonshows that the trial court's judgment was supported by substantial evidence and was not against the weight of the evidence. E.P. cites Epperson v. Director of Revenue, 841 S.W.2d 252, 255 (Mo.App.1992), for the proposition that the appellate court need not defer to the trial court's credibility determination when the disputed question is not a matter of direct contradictions by different witnesses. But whether E.P. orally communicated an intent to withdraw consent was contradicted by other witnesses, namely Ms. Welch and Ms. Wilbers, the very persons to whom E.P. allegedly withdrew her consent. Furthermore, the Epperson court was not faced with an express finding that a witness was not credible; Mr. Epperson argued that a credibility determination was implied by the trial court's ultimate conclusion. Id. In this case, in contrast, the commissioner expressly found E.P. and Ms. Gedeon were not credible. We cannot ignore that determination. Arguing that we need not defer to the trial court's credibility determination, E.P. also cites Sanderson v. Porta-Fab Corp., 989 S.W.2d 599, 604 (Mo.App.1999). But we find Sanderson *11 inapplicable because it dealt with no conflicting evidence, unlike this case.
Only E.P. and Ms. Gedeon testified that E.P. orally communicated an intent to withdraw consent to the adoption. The commissioner expressly found their testimony not credible. Substantial evidence showed that E.P., although distressed after giving up her baby, did not orally withdraw consent. The judgment is supported by substantial evidence and is not against the weight of the evidence. Point denied.

II.
In her second point, citing In re D., 408 S.W.2d 361, 367 (Mo.App.1966), E.P. argues that the trial court erred in denying her motion to withdraw consent, because the weight of the evidence showed her consent was given under duress of a "force of circumstances." Assuming arguendo that In re D. remains valid despite the many revisions to adoption statutes in the intervening years, we find the case distinguishable. In re D. involved express threats by the father toward the mother of the children, id. at 364, and it did not include the procedural protections such as the consent hearing afforded to E.P.
E.P. argues that she did not fully understand the adoption proceedings she attended and was afraid to speak up at her consent hearing despite her misgivings about giving up Baby Girl P.[3] But Missouri appellate courts have repeatedly affirmed denials of motions to withdraw consent based on claims the biological parent did not understand the consent proceedings and their consequences. In re D.C.C., 935 S.W.2d 657 (Mo.App.1996); In re Adoption of ADA, 789 S.W.2d 842, 845 (Mo.App. 1990). Both her attorney and the commissioner questioned E.P. about her understanding of the consent, and E.P. indicated that she understood what she was undertaking. At all relevant times, an interpreter was provided. Given these procedural protections and the court's credibility determinations, we find the trial court's judgment that E.P. was not under duress of a force of circumstances when she consented is supported by substantial evidence and is not against the weight of the evidence. Point denied.

III.
In her third point, E.P. argues that the weight of the evidence showed agents of ABC misrepresented to her that her consent was irrevocable at the conclusion of the consent hearing. She argues these misrepresentations constitute good cause to allow her to withdraw consent. A trial court may, in its discretion and on a showing of good cause, allow withdrawal of consent to adoption. In re D.C.C., 935 S.W.2d at 659 (citing In re Adoption of ADA, 789 S.W.2d at 846). E.P. cites no case, however, in which a Missouri court found good cause to allow withdrawal of consent.
The circuit court found that E.P. had been informed that she was not bound by the consent until the commissioner and then a judge accepted it. The circuit court, within its discretion, concluded that E.P. was not subject to any misrepresentation that prevented her from timely withdrawing her consent. E.P.'s attorney had invited her to contact him via the interpreter with any questions, but when E.P. talked to the interpreter on June 21, she said she did not wish to talk to the attorney. *12 Furthermore, the commissioner found not credible each person who testified that E.P. was told she could not withdraw her consent. In light of that credibility determination, we find that the judgment that E.P. was not subject to misrepresentations about her right to withdraw consent is supported by substantial evidence and is not against the weight of the evidence. Point denied.

IV.
When this case was previously before this court, we stated, "Between June 18 and 22, E.P. attempted orally to withdraw her consent to the termination of her parental rights." In re Baby Girl P., 159 S.W.3d at 864. We held that "the case must be remanded to determine whether, under the circumstances of this case, E.P. orally communicated a withdrawal of consent under section 453.030.7 before the trial court accepted her previously given consent." Id. at 865. E.P. now asserts that the "law of the case" doctrine applies to our prior statement that E.P. attempted oral withdrawal of consent. We disagree.
The "law of the case" doctrine states that an appellate decision is binding on "subsequent proceedings in the same cause, precluding reexamination of issues decided in the original appeal." Oldaker v. Peters, 869 S.W.2d 94, 97 (Mo.App.1993). E.P. argues that we have already decided, in the previous appeal, that she orally communicated withdrawal of consent. This argument fails to acknowledge our order to the circuit court, directing the court to "determine whether ... E.P. orally communicated a withdrawal of consent." In re Baby Girl P., 159 S.W.3d at 865. This order to the circuit court makes clear that we did not conclude that E.P. had orally withdrawn consent; had we drawn that conclusion, we need not have directed the circuit court to decide that very question. The circuit court did exactly what we directed.
E.P. further argues that the circuit court erred in finding that E.P.'s testimony was "of no probative value." She argues that the testimony was offered to prove the central question to be decided, and was therefore necessarily "probative." She cites a portion of the definition of "probative evidence," calling it evidence which "furnishes, establishes, or contributes toward proof." BLACK'S LAW DICTIONARY 1203 (6th ed.1990). E.P. is right that her testimony was "probative" in the sense that it was relevant and therefore admissible. But the circuit court said this in conjunction with its finding that E.P.'s testimony was not credible. The circuit court clearly meant that the testimony was not probative because it was not credible. The distinction between probative-as-admissible and probative-as-compelling is highlighted by BLACK'S further explication of "probative evidence": "Testimony carrying quality of proof and having fitness to induce conviction of truth, consisting of fact and reason co-operating as co-ordinate factors." Id. (emphasis added). In other words, although admissible, evidence which is not credible proves nothing and is not "probative." The circuit court committed no error. The point is denied; the judgment is affirmed.
PAUL M. SPINDEN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.
NOTES
[1] All statutory references are to Mo.Rev.Stat. (2003) unless otherwise noted.
[2] A hearing is not statutorily required but has long been the practice in Jackson County. By local administrative rule, such hearings are held before a commissioner on Fridays; the family court commissioner initially accepts the consent and forwards that recommendation to the Family Court Administrative (juvenile) judge.
[3] We are very impressed with the hearing held by the family court commissioner on the original consent. The commissioner repeatedly told the mother that all she had to say was that she didn't want to proceed. He offered to appoint another lawyer who spoke Spanish. She declined all of these offers.